139 N.J. Super. 142 (1976)
353 A.2d 105
ALEX CIPPARULO, PLAINTIFF-APPELLANT,
v.
DAVID FRIEDLAND PAINTING CO., INC., A NEW JERSEY CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 2, 1975.
Decided February 4, 1976.
Before Judges MATTHEWS, LORA and MORGAN.
*143 Mr. Jack Wysoker argued the cause for appellant (Messrs. Mandel, Wysoker, Sherman, Glassner, Weingartner & Feingold, attorneys).
Mr. Ernest Prupis argued the cause for respondent (Messrs. Weltchek, Prupis & Ritz, attorneys).
PER CURIAM.
This is an action brought under the New Jersey Prevailing Wage Act (PWA), N.J.S.A. 34:11-56.25 et seq., by plaintiff as business representative of Painters Local 480 and on behalf of Local 480 members who worked for defendant, a subcontractor on three Rutgers University public projects in Piscataway, New Jersey. The trial judge, sitting without a jury, decided for defendant and plaintiff appeals.
Defendant (Friedland) is a union painting subcontractor which performed work on three separate building projects on the Rutgers University campus in Piscataway Township, Middlesex County, New Jersey. Plaintiff is the business representative of Painters Local 480, members of which performed work for the plaintiff on these projects. He instituted this action against Friedland under the PWA for $3,056.95 (plus interest, costs and attorney's fees) which is derived by multiplying 4,703 work hours between September 1, 1971 and May 1, 1972 (a stipulated total) by 65 cents an hour (the difference between $7.20 and $7.85). The source of these figures is hereinafter explained.
Under N.J.S.A. 34:11-56.25:
It is declared to be the public policy of this State to establish a prevailing wage level for workmen engaged in public works in order to safeguard their efficiency and general well being and to protect them as well as their employers from the effects of serious and unfair competition resulting from wage levels detrimental to efficiency and well-being. [L. 1963, c. 150, § 1.]
The definitions in N.J.S.A. 34:11-56.26 make it clear that Rutgers University is a "public body," that the projects in *144 question were "public works," that Middlesex County is a "locality," and that the members of Local 480 who performed work on the projects are "workmen." N.J.S.A. 34:11-56.28 requires that any public body awarding any contract for public work shall ascertain from the Department of Labor and Industry the prevailing wage rate in the locality in which the work is to be performed for each craft or trade needed to perform the work, and shall specify in the contract itself what that rate actually is. N.J.S.A. 34:11-56.27 requires that every contract in excess of $2,000 for public work to which a public body is a party shall contain a provision to the effect that all workmen on the project be paid no less than the prevailing wage rate. Any worker paid less than that rate may recover the difference in a civil action (plus costs and reasonable attorney's fees). Further, any agreement between such workers and the employer to work for less than the prevailing rate is no defense to such an action. Id.
The provision which is the center of controversy in this action concerns the establishment of the prevailing wage rate by the Commissioner of the Department of Labor and Industry (Commissioner) N.J.S.A. 34:11-56.30 provides:
The commissioner shall determine the prevailing wage rate and forthwith shall establish the prevailing wage in the locality in which the public work is to be performed for each craft or trade or classification of all workmen needed to perform public work contracts. The prevailing wage shall be determined and computed in accordance with rules and regulations issued by the commissioner as may be required to carry out the provisions of this act; provided, however, that employer contributions for employee benefits pursuant to a then existing bona fide collective bargaining agreement shall be considered an integral part of the wage rate paid by employers of any craft or trade in the locality under consideration for the purpose of determining the prevailing wage under this act. Said wage determination shall be conclusive for a period of 2 years from date of issuance unless superseded within said 2-year period by a later determination. The commissioner shall forthwith announce all said determinations and give notice by mail of all determinations of prevailing wage rates made pursuant to this section to any representative of any craft or trade, any employer, or any representative of any group of employers who shall in writing request the commissioner so to do. [L. 1963, c. 150, § 6; emphasis added]
*145 It is the meaning of the italicized sentence which is before us for determination on this appeal.
Rutgers University entered into construction contracts for three separate buildings with Gumina Building and Construction Co. and with Branciforte Buildings, Inc. The two prime contractors then entered into subcontracts with defendant as follows: January 26, 1970  Academic Building  Livingston College (Gumina); July 22, 1970  Rutgers Psychiatric Institute (Gumina); October 26, 1970  Wright Chemistry Lab. (Branciforte).
Prior to the signing of any of the contracts Rutgers requested the Department of Labor and Industry for a prevailing wage rate determination for each project. While the requests were made on three separate occasions between September 1969 and January 1970, the dates of all three of the wage determinations are May 1, 1969. On all three the rate in Middlesex County for painters was fixed as $6.35 an hour as of May 1, 1969, and $6.75 an hour as of May 1, 1970. The cover page of each decision states, among other things, the following:
Applicable rates are those in effect at that date on which a contract is awarded, and must be kept current as indicated.
This determination is conclusive for a period of 2 yrs. from date of issuance unless superseded within said 2 yrs. period by a later determination. [Emphasis supplied]
Prior to September 1, 1971 defendant was paying his workers $7.20 an hour. (The amount of wages paid before September 1, 1971 is not in issue.) Defendant was paying $7.20 rather than the prevailing wage rate as given in the decision because the collective bargaining agreement in effect between the parties called for $6.95 and defendant was paying 25 cents an hour more so as to establish a uniform rate of wages for work done with brushes or with rollers. (Roller work commands a premium).
Between September 1971 and May 1, 1972 the workers of Local 480 worked a stipulated total of 4,703 hours for which *146 they were paid $7.20 an hour. Plaintiff contends that since the prevailing wage rate rose to $7.85 an hour as of September 1, 1971 pursuant to a subsequent decision made by the Department, the workers were entitled to an extra 65 cents an hour for those hours worked.[1] Defendant argues that it only must pay the wage rate in effect at the time the contract was entered into and that subsequent wage rate decisions do not and should not supersede those in effect at the time the contract was signed.
Plaintiff and his counsel attempted recovery directly from defendant, and then through the Labor Department. The Department, however, agreed with defendant in its interpretation of the act. His action followed. The trial judge held that "in accordance with the administrative construction that the general wage rate determinations promulgated during the two year period did not supersede the specific wage rate determinations for the Rutgers projects."
This issue is one of first impression. The validity of the act has been upheld and the procedure by which a wage rate decision is made has been fully described in Male v. Ernest Renda Contracting Co., 122 N.J. Super. 526, 531 (App. Div. 1973) aff'd 64 N.J. 199 (1974), cert. den. 419 U.S. 839, 95 S.Ct. 69, 42 L.Ed.2d 66 (1974).
Augustine R. Lombardo, the supervisor of public contracts for the New Jersey Department of Labor who is in charge of wage rate decisions, testified that the procedure was correctly described in Renda. He also testified that no other wage decisions were issued for the three contracts in question; that the administrative interpretation of the act was that subsequent changes in the general rate did not apply to a specific contract once it was signed; that the only applicable wage rate decision was the one attached to the specific contract; *147 that to his knowledge no other cases presenting this issue had ever come before the department; that the prevailing wage rate was ordinarily determined twice yearly, and that the clause in both the statutory language and the wage rate decision referring to the superseding within two years of a new rate, had not been given any effect by the department.
Plaintiff places primary emphasis on the statutory language in N.J.S.A. 34:11-56.30:
Said wage determination shall be conclusive for a period of 2 years from date of issuance unless superseded within said 2-year period by a later determination.
and N.J.S.A. 34:11-56.32 which provides:
Contractors and subcontractors performing public work of a public body subject to the provisions of this act shall post the prevailing wage rates for each craft and classification involved as determined by the commissioner, including the effective date of any changes thereof, in prominent and easily accessible places at the site of the work or at such place or places as are used by them to pay workmen their wages. [Emphasis supplied]
He argues that since the act is remedial in nature, "it is entitled to a liberal construction and application in order to effectuate the strong public policy of protecting those whose labor goes into public projects," Newark Laborers' v. Comm. Union Ins. Co., 126 N.J. Super. 1, 8 (App. Div. 1973); that since wage rate decisions are regularly made twice a year and not merely when a request is made for a specific project, and since there is no statutory requirement that subsequent decisions be attached to the contract in order to be effective, the statute could have no meaning other than that which made any subsequent wage rate decision supersede a prior specific rate decision. On policy grounds, he contends that if the contractor need only pay the wage rate attached to the specific contract, and if the project took five or ten years to complete, the workers would fall further and further behind the wage rates paid both on private jobs under collective bargaining *148 agreements and on public jobs in which subsequent higher wage rate decisions were issued. We disagree.
The prevailing wage rate is a minimum wage rate and is unquestionably designed to protect union contractors from underbidding on public work by their non-union competitors who conceivably would have the advantage of paying their labor nonunion wages. The act provides, in certain terms, that it does not prohibit the payment of wages in excess of the prevailing wage rate to workers employed in public work. N.J.S.A. 34:11-56.28. Thus the act does not inhibit the collective bargaining process in any manner during the execution of a contract for public work. Its purpose is to insure that the prevailing wage rate existing at the time of the signing of a public contract constitutes the minimum wage paid to workers under that contract.
We read the act to provide for a "specific" wage rate for each contract executed for public work, which consists of the general prevailing wage rate which has been promulgated by the Department and is in effect at the time of the signing of the contract. This "specific" wage rate endures for the life of the contract. We express no opinion as to whether the "specific" rate may or may not be changed by the Department with or without the consent of the parties since this question is not presently before us. Under our view of the statute, therefore, the prevailing wage rate is "current" at the time of the execution of the contract for public work and remains "current" as to that contract during its execution. The general prevailing wage rate, however, does not remain static and may be changed by the Department at any time subsequent to its promulgation, but certainly every two years.
It is apparent that the ability to predict wages to be paid to workers during the course of the execution of a public works contract is an essential element of a successful bid. Thus, to supersede a prevailing wage during the execution of such a contract would unquestionably throw a successful bidder's cost estimate in a state of confusion. Although the prevailing wage rate is a minimum rate, as we have stated, a *149 contractor bidding on public work can reasonably estimate any increase in wages through collective bargaining, and if he is a union employer, also have an influence on the amount of any increase in wages through participation in the bargaining process. The prevailing wage rate, on the other hand, due to the method of its calculation, might fluctuate at an uncertain and therefore unpredictable rate. We note also that in the case of nonunion employers a greater margin of error would be presented in estimating future prevailing wage rates, since those employers would have no influence in the collective bargaining processes which actually generate the rates.
We note, also, that cases interpreting a somewhat similar federal statute, the Davis-Bacon Act (40 U.S.C.A. § 276a et seq.) are consistent with the result reached here. Concededly, the federal legislation does not employ the precise language here in question before us. Bushman Constr. Co. v. United States, 164 F. Supp. 239, 240, 143 Ct. Cl. 264 (1958); Twin Falls Const. Co. v. Operating Engineers Local No. 370, 95 Idaho 370, 509 P.2d 788 (Sup. Ct. 1973).
Finally, we find no merit to plaintiff's arguments that notwithstanding the statutory language, the workers can recover based solely on the contractual language of the wage rate decision itself, which is part of the contract, and that we should reverse because the trial judge made no findings of fact. With respect to the latter argument we note no factual dispute and observe that the question presented is one strictly of law.
Affirmed. No costs.
NOTES
[1] This subsequent wage rate decision was a general one, i.e., it was not issued specifically for any particular contract but was merely kept on file in order to meet requests from public bodies for determinations.