228 N.J. Super. 482 (1988)
550 A.2d 178
CHARLES SERRAINO, COMMISSIONER OF LABOR, STATE OF NEW JERSEY, PLAINTIFF,
v.
MAR-D, INC., AMERON, INC., PIPE LINING DIVISION AND FEDERAL INSURANCE COMPANY, DEFENDANTS.
Superior Court of New Jersey, Law Division Mercer County.
Decided September 23, 1988.
*484 Elizabeth Zuckerman for plaintiff (W. Cary Edwards, Atty. General of New Jersey, attorney).
Edwin C. Landis, Jr. and Michael C. Caulfield for defendants Ameron, Inc., Pipe Lining Division and Federal Insurance Company (Meyner & Landis, attorneys).
CARCHMAN, J.S.C.
These cross-motions for summary judgment present the novel issue of a general contractor and surety's liability under the Bond Act, N.J.S.A. 2A:44-143 et seq., for a defaulting subcontractor's failure to comply with the Prevailing Wage Act, N.J.S.A. 34:11-56.25 et seq. In addition, the motions raise the issue of plaintiff Commissioner of Labor's standing to bring this action on behalf of the subcontractor's employees.
The relevant facts are not in dispute. On May 2, 1985, the general contractor, Ameron, Inc. (hereinafter "Ameron"), contracted with the City of Trenton (hereinafter "Trenton") to perform cleaning and cementing of mortar linings in the Trenton water system. Ameron, thereafter, on June 5, 1985, subcontracted with defendant Mar-D, Inc. (hereinafter "Mar-D") for material and labor on the contract.
As mandated by N.J.S.A. 34:11-56.25 et seq., the general contract between Ameron and Trenton required the general contractor to

*485 ... pay all workmen as a minimum the prevailing wage rate in accordance with Chapter 150 of the New Jersey Laws of 1963, Prevailing Wages on Public Contracts & U.S. Department of Labor Wage Rates with the higher rate for any given occupation being the governing rate.
In February 1986, employees of Mar-D complained to the New Jersey Department of Labor's public contracts section of the Office of Wage and Hour Compliance, claiming that they had been paid less than the prevailing wage. Plaintiff's preliminary investigation revealed that $55,092.82 (the difference between wages paid and the prevailing wage) was owing to 11 employees. Plaintiff concluded that defendant Mar-D violated the Prevailing Wage Act, N.J.S.A. 34:11-56.25, and brought this action on behalf of the 11 employees pursuant to N.J.S.A. 34:11-56.30. This statute requires employers on public works contracts to pay employees not less than the prevailing wage  a rate determined by plaintiff. Plaintiff brought this action against not only the subcontractor, Mar-D but the general contractor, defendant Ameron, and the general contractor's surety, defendant Federal Insurance Company (hereinafter "Federal"). Mar-D is apparently no longer in business and has not been served in this action.
Plaintiff seeks to enforce its alleged statutory right to collect the wage deficiency on behalf of the employees, see N.J.S.A. 34:11-56.30 and -56.36, and alleges, as to defendant Ameron, that the general contractor is responsible for wage deficiencies due from subcontractors. Federal concedes, that if liability attaches to defendant Ameron, then defendant, Federal is liable as Ameron's surety.
The relevant section of the Prevailing Wage Act provides as follows:
If any workman is paid by an employer less than the prevailing wage to which such workman is entitled under the provisions of this Act, such workman may recover in a civil action the full amount of such prevailing wage less any amount actually paid to him or her by the employer. [N.J.S.A. 34:11-56.40]
The Prevailing Wage Act sets forth the wage obligations of a general contractor and those of a subcontractor. All parties agree that the Legislature intended to, and indeed did, impose *486 several liability upon both general contractors and subcontractors for violation of the Prevailing Wage Act; however, Ameron maintains that the general contractor and/or its surety are not liable for a subcontractor's violation of the act. Ameron argues that the statute imposes liability only upon the entity which has the direct employer-employee relationship with the underpaid workers, and it is not responsible for Mar-D's violation of the statute. Ameron further urges that had the Legislature intended a general contractor, such as Ameron, to be liable for the failure of its subcontractor to comply with the Prevailing Wage Act, it would have expressly stated so. Ameron claims that this omission evidences a legislative intent not to hold general contractors liable for their subcontractor's violation of the act.
Plaintiff contends that where a subcontractor fails to pay the prevailing wage to its employees, the Legislature intended to impose liability jointly upon a contractor and its surety.
It is well settled in New Jersey that statutory interpretation must be based on the intent of the Legislature. See N.J. Turnpike Employees v. N.J. Turnpike Authority, 200 N.J. Super. 48, 53 (App.Div. 1985); Johns Manville Products Corp. v. Dronebarger, 211 N.J. Super. 520, 525 (Law Div. 1986). To determine intent with a degree of certainty, the court must consider many factors including the statutory language, legislative history and underlying policy, as well as, concepts of reasonableness. Coletti v. Union County Board of Chosen Freeholders, 217 N.J. Super. 31 (App.Div. 1987). The public policy statement set forth in N.J.S.A. 34:11-56.25 reveals that the Legislature's intent in enacting the Prevailing Wage Act was:
... to establish a prevailing wage level for workmen engaged in public works in order to safeguard their efficiency and general well being and to protect them as well as their employers from the effects of serious and unfair competition resulting from wage levels detrimental to efficiency and well being.
As noted above, the contract executed between Trenton and Ameron required, in accordance with the statute, that *487 Ameron pay all workmen the prevailing wage rate as a minimum. There is no reference, explicit or implicit, to exclude a specific class of employees, such as the subcontractor's employees. The Prevailing Wage Act makes reference to both the obligations of a general contractor to its employees and the obligations of a subcontractor to its employees. These references are noted in specific sections of the Prevailing Wage Act. See, e.g., N.J.S.A. 34:11-56.32 which provides: "Contractors and subcontractors performing public work ... shall post the prevailing wage rates for each craft," emphasis supplied, and N.J.S.A. 34:11-56.33 which states:
... it shall be duty of the the treasurer of the public body ... to require the contractor and subcontractor to file written statements ... certifying to the amounts then due and owing from such contractor and subcontractor ... to any and all workmen for wages due on account of public work.... [Emphasis supplied]
These references indicate the Legislature's awareness not to distinguish between contractors and subcontractors but to include both of these classes under the scope of the act. It is language which is designed to be inclusive rather than to differentiate.
However, Ameron claims that statutory distinctions between a general contractor and a subcontractor's obligations, such as those found in N.J.S.A. 34:11-56.26(7), which defines "workman" as laborer, apprentice, or helper employed by any contractor or subcontractor and N.J.S.A. 34:11-56.35, which sets forth the penalties to be imposed upon a contractor or subcontractor for a violation of the Prevailing Wage Act, are persuasive on the issue of legislative intent. Ameron contends that these statutory distinctions evidence an intent on the part of the Legislature to impose sole liability upon a subcontractor who violates the act and not upon the general contractor. Ameron argues that it cannot be held liable for Mar-D's failure to pay its own workers, as the statute explicitly imposes liability upon Mar-D, as subcontractor for its failure to comply with the act. Ameron claims that, since the plain language of the statute addressed only the liability of the entity which has a *488 direct employer-employee relationship with the claimants, in this case, Mar-D, and in the absence of any explicit language imposing subcontractor liability on a general contractor, Ameron, cannot be liable.
Ameron's argument is not persuasive. The Prevailing Wage Act imposes liability for all workmen. This indicates an intent to broaden, not limit, the general contractor's liability for payment of prevailing wages to only its employees. This provision ensures that all workers are paid the prevailing wage regardless of whether they are employed by the general contractor or the subcontractor. Ameron's argument is contrary to the legislative intent of the statute.
The act's express reference to a subcontractor's responsibility to comply with the act merely evidences an intent to ensure that a subcontractor remains liable for its violations of the Prevailing Wage Act. It also evidences an intent to ensure that all workers are paid the prevailing wage. It would be inconsistent with the legislative intent to interpret these provisions imposing liability upon subcontractors for their violation of the Prevailing Wage Act as simultaneously immunizing a contractor from liability. To do so would be contrary to the policy of the Prevailing Wage Act and eviscerate its remedial objectives.
In Horn v. Serritella Bros., Inc. 190 N.J. Super. 280 (App. Div. 1983), citing Cipparulo v. Friedland 139 N.J. Super. 142, 148 (App.Div. 1976), the court stated:
The prevailing wage rate is a minimum wage rate and is unquestionably designed to protect union contractors from under-bidding on public work by their non-union competitors who conceivably would have the advantage of paying their labor non-union wages. Its purpose is to insure that the prevailing wage rate existing at the time of the signing of a public contract constitutes the minimum wage paid to workers under that contract. [190 N.J. Super. at 283]
The act is remedial in nature and thus is entitled to a liberal construction and application in order to effectuate the strong public policy of protecting those whose labor goes into public projects. Ibid.
*489 In addition to N.J.S.A. 34:11-56.26(7), and -56.27, cited above, N.J.S.A. 34:11-56.28 provides for the responsibility of a contractor to ensure that all workmen on the project are properly paid. N.J.S.A. 34:11-56.28 states in pertinent part:
The public body awarding any contractor public work .. . shall ascertain from the commission the prevailing wage rate ... for each craft or trade and shall specify in the contract itself what the prevailing wage rate ... is for ... all workmen needed to perform the contract.
Mar-D's employees were workers employed to perform the contract entered into between Ameron and Trenton. They were the "workmen" which the Prevailing Wage Act was intended to protect. Pursuant to the statute, Ameron promised Trenton that it would ensure that "all workmen" (as defined in N.J.S.A. 34:11-56.26(7)) would be paid. By providing for the protection of all "workmen" the Legislature intended that a contractor ensure that the prevailing wage be paid to all workmen on the project for each craft or trade of the workmen performing the contract. Ameron agreed with Trenton that it would ensure that "all workmen" (as defined in N.J.S.A. 34:11-56.26(7)) would be paid. If Ameron's position were accepted, the ability of plaintiff to enforce the statute's intent would be neutralized. Under Ameron's view, a general contractor could discharge its statutory and contractual obligation to pay the prevailing wage merely by subcontracting the work to a subsidiary or separate corporation which will not pay the prevailing wage all to the detriment of the workers. Any general contractor could clearly underbid competitors for a public project by relying on a bid of a subcontractor, knowing that the subcontractor would have to violate the provisions of the Prevailing Wage Act to meet such a bid. A contractor would be awarded the contract because of the low bid of the subcontractor. Nevertheless, Ameron claims that this is what the Legislature intended. To the contrary, this is exactly the situation which the Legislature sought to prohibit by enacting the Prevailing Wage Act. The purpose of the act  to establish a prevailing wage level in order to safeguard the well being of workmen engaged in public works  would be severely curtailed should the statute be construed as *490 Ameron urges. Both the language and the intent of the act render Ameron liable for the subcontractor's violation of the act.
Furthermore, Federal as the surety of Ameron, is liable under the Bond Act, N.J.S.A. 2A:44-143 et seq., for Mar-D's violation of the Prevailing Wage Act. The Bond Act provides that if an indebtedness due has not been paid "such person may ... bring an action in his own name upon the bond." N.J.S.A. 2A:44-146. Moreover, a prime contractor can be held liable for a subcontractor's failure to adhere to contract terms. As the New Jersey Supreme Court determined in Hiller & Skoglund, Inc. v. Atlantic Creosoting Co., Inc., 40 N.J. 6, 13 (1963), the requirements of the Bond Act guarantee payment by the contractor and the subcontractor for all labor performed or materials used on the public project. Thus, the Court noted, "the prime contractor, by virtue of the bond, becomes a surety for the subcontractor, albeit an involuntary and uncompensated one." Id. at 14. At oral argument, Ameron conceded that if the subcontractor's employees were unpaid, the employees would have a right to bring an action under the bond to recover unpaid wages. The failure to pay the subcontractor's employees their statutory wages or the difference between wages paid and the prevailing rate compels the same remedy. It is illogical to grant a remedy for unpaid workers and limit the remedy for partially paid workers.
Ameron contends that the Bond Act prohibits plaintiff from bringing a claim on behalf of unpaid workers. This argument must be rejected as an attempt to undermine the purpose of the act by elevating form over substance. The Bond Act, N.J.S.A. 2A:44-143 et seq., was designed to offer broad protection to unpaid workers who were precluded from recovery under the Municipal Mechanic's Lien Law. Hiller & Skoglund, Inc. v. Atlantic Creosoting Co., Inc., supra at 13. It would defeat the purpose of the act to require each unpaid laborer to bring his action at his own expense when the Commissioner *491 can file one claim on behalf of all the unpaid laborers on a public job. Furthermore, N.J.S.A. 34:11-56.40 expressly provides:
At the request of any workman paid less than the prevailing wage to which such workman was entitled under the provisions of the Act the Commissioner may take an assignment of the wage claim in trust for the assigning workman and may bring any legal action necessary to collect the claim....
Considering this broad grant of authority to plaintiff on behalf of the workers, and considering the purpose of the Bond Act as expressed in Hiller v. Skoglund, Inc., supra, to the extent that plaintiff is bringing this action on behalf of a group of individual workmen, the action is in effect being brought by individuals. And see Male v. Ernest Renda Contracting Co., 122 N.J. Super. 526, 536 (App.Div. 1973) where the court comprehensively discussed the statutory powers available to plaintiff to enforce the Prevailing Wage Act. Any funds recovered by plaintiff will be held for the benefit of the individual workmen who will ultimately receive these monies.
Accordingly, the bond that Ameron posted pursuant to the Bond Act guarantees payment of all wages owed to the laborers of Mar-D. In accordance with the purpose and intent of the Bond Act, plaintiff may bring a claim on behalf of the unpaid subcontractor's employees. Plaintiff's motion for summary judgment as to liability against Ameron and Federal is granted. Ameron's motion for summary judgment is denied.