720 A.2d 619 (1998)
316 N.J. Super. 437
FOUNDATION FOR FAIR CONTRACTING, LTD., and Miguel Mattei, Plaintiffs-Appellants,
v.
NEW JERSEY STATE DEPARTMENT OF LABORWAGE AND HOUR COMPLIANCE DIVISION; City of Trenton; Lutheran Senior Services, Inc.; Circle F Urban Renewal Limited Partnership; and Costanza Contracting Company, Inc., Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued October 7, 1998.
Decided December 2, 1998.
Deborah L. Mains, Camden, for plaintiff-appellant, (Tomar, Simonoff, Adourian, O'Brien, Kaplan, Jacoby, and Graziano, Haddonfield, attorneys, Ms. Mains and Mark E. Belland, Haddonfield, on the brief).
Donald Palombi, Assistant Chief Deputy Attorney, for defendant-respondent New Jersey Department of Labor (Peter Verniero, Attorney General of New Jersey, attorney; Mary C. Jacobson, Assistant Attorney General, of counsel, Lewis A. Scheindlin, Deputy Attorney General, on the brief).
Bruce Meller, River Edge, for defendant-respondent Costanza Contracting Company, Inc. (Peckar and Abramson, attorneys, Mr. Meller and Gary P. Rothman, on the brief).
Ellen O'Connell, Princeton, for defendants-respondents Lutheran Senior Services, *620 Inc. and Circle F Urban Renewal Limited Partnership (Smith, Stratton, Wise, Heher & Brennan, attorneys, Ms. O'Connell and Christopher P. Morrison, on the brief).
Lyle P. Hough, Jr., Assistant City Attorney, for defendant-respondent City of Trenton (Rocky L. Peterson, City Attorney, attorneys, Mr. Hough, on the brief).
Before Judges STERN, BRAITHWAITE and WECKER.
The opinion of the court was delivered by WECKER, J.A.D.
Plaintiffs Foundation for Fair Contracting, Ltd. (FFC) and Miguel Mattei appeal from a summary judgment dismissing their complaint against defendants New Jersey State Department of Labor (DOL), City of Trenton, Lutheran Senior Services, Inc., Circle F Urban Renewal Limited Partnership, and Costanza Contracting Company, Inc. Plaintiffs' complaint sought a declaration that the Prevailing Wage Act, N.J.S.A. 34:11-56.25 et seq. (the Act), applies to a construction contract between defendants Circle F and Costanza for construction of a senior citizens housing project funded in part by a grant from the State and to be operated under an agreement between the City and Circle F, in which Lutheran Senior Services is a general partner.
In their motions for summary judgment and/or to dismiss the complaint, the several defendants challenged plaintiffs' standing to maintain this action; the jurisdiction of the Law Division to entertain the action; and the applicability of the Act to this construction contract. The Law Division Judge erred in concluding that he had jurisdiction to hear the matter. He also concluded that neither plaintiff had standing to bring this action, but that if either plaintiff did have standing, the Act did not apply. Because we agree that the Act does not apply to this construction contract, we affirm. In light of our disposition on the merits, we need not address the standing issues raised by defendants, and will only briefly address the jurisdictional issue raised by the DOL.
The background facts are not in dispute. The City of Trenton received a grant of over $1.3 million from the Department of Community Affairs under the Neighborhood Preservation Program, N.J.S.A. 52:27D-320,[1] part of the Fair Housing Act, N.J.S.A. 52:27D-301 et seq., enacted in 1985. The grant was to finance the conversion of the Circle F factory building in Trenton into seventy affordable housing units for senior citizens with low to moderate incomes. The grant agreement between the Department of Community Affairs and the City provides for the City to comply with all "applicable" laws, expressly including but not limited to several federal and state financial audit requirements, as well as affirmative action and non-discrimination laws. The grant agreement does not specifically mention the Prevailing Wage Act.
Lutheran Senior Services, Inc., as general partner, along with several limited partners, formed Circle F Urban Renewal Limited Partnership[2] as an "urban renewal entity" pursuant to the Long Term Tax Exemption Law, N.J.S.A. 40A:20-1 et seq. That law, enacted in 1991, consolidated
the various statutes under which municipalities may agree with private entities for the private entities to undertake redevelopment projects in return for tax exemptions.

....
This bill is part of a package of bills that provides a new partnership between the public and private sectors to redevelop and rehabilitate New Jersey's urban centers, older suburbs, and other communities that are in need of redevelopment. The bills encourage the maximum participation of the private sector in the redevelopment of the State's distressed communities.

*621 [Senate County and Municipal Govt. Comm. Statement to Senate No. 291, L.1991, c. 431.]
The legislation's express purpose is in large part "to encourage private capital and participation by private enterprise" in the construction, renovation and rehabilitation of low and moderate income housing. N.J.S.A. 40A:20-2, citing the Local Redevelopment and Housing Law, N.J.S.A. 40A:12A-1 et seq., and expressing the intention that these two acts be construed together.
The City entered into a developer's agreement with Circle F for the construction of the project, with Circle F undertaking to "develop, market, and rent" to senior citizens at substantially less than market rates, ranging from $275 per month for an efficiency apartment to $450 for certain two-bedroom apartments. Circle F contracted with Costanza to perform as the general contractor on the Circle F project.
FFC holds itself out as a nonprofit corporation whose stated "sole and exclusive purpose is to monitor public works projects for compliance with the New Jersey Prevailing Wage Act ... and other relevant state and federal statutes, thereby protecting the workers employed on such projects and the taxpayers whose money is used to finance such projects." Mattei describes himself as a "citizen" and "taxpayer" of the State of New Jersey, who resides in Trenton. FFC sent an investigator to the Circle F project to inquire into Costanza's compliance with the Act. Although FFC's investigator apparently was unable to determine whether Costanza was paying the workers employed on the Circle F project the prevailing wage under the Act, it is undisputed that Costanza has not paid all of its employees on this project in accordance with the Act. Costanza maintains that the project "was let as a non-Prevailing Wage Act project."
FFC's investigator then contacted the DOL "regarding defendant Costanza's obligation to pay prevailing wages to its employees working on the project." Michael McCarthy, Chief of Enforcement for the DOL's Wage and Hour Compliance Division, responded by letter, stating that the DOL had been advised by the Attorney General's office that the Prevailing Wage Act did not apply in the absence of an agreement between a public body and a contractor, and the Act therefore did not apply to the Circle F Project. The Attorney General's letter opinion cited a prior letter opinion to the DOL in 1990 to the same effect, stating that the Act did not apply to situations where developers received public funds and then entered into separate contracts with developers, notwithstanding the fact that public funds were used to pay for the work. The City of Trenton also had been advised by DOL that the Act did not apply to the project. Counsel to FFC wrote to McCarthy asking the DOL to reconsider its position, and McCarthy declined to do so "absent a declaratory judgment from a court of competent jurisdiction...."
The Prevailing Wage Act provides in pertinent part:
Every contract in excess of the prevailing wage contract threshold amount for any public work to which any public body is a party or for public work to be done on property or premises leased or to be leased by a public body shall contain a provision stating the prevailing wage rate which can be paid (as shall be designated by the commissioner) to the workers employed in the performance of the contract and the contract shall contain a stipulation that such workers shall be paid not less than such prevailing wage rate.

[N.J.S.A. 34:11-56.27 (emphasis added).]
The "prevailing wage contract threshold" was at all relevant times $9,500. N.J.S.A. 34:11-56.26(11)(a). There is no dispute that the construction contract exceeds this threshold.
"Public work" is defined under the Act, in relevant part, as:
... construction, reconstruction, demolition, alteration, or repair work, or maintenance work, including painting and decorating, done under contract and paid for in whole or in part out of the funds of a public body, except work performed under a rehabilitation program.

*622 [N.J.S.A. 34:11-56.26(5) (emphasis added).]
"Public body" is defined in relevant part as:
the State of New Jersey, any of its political subdivisions, any authority created by the Legislature of the State of New Jersey and any instrumentality or agency of the State of New Jersey or of any of its political subdivisions.
[N.J.S.A. 34:11-56.26(4) (emphasis added).]
Plaintiffs rely on language in the Developer's Agreement between Trenton and Circle F, requiring Circle F to "comply with all applicable State, Federal and local laws, rules and regulations, whether because the Developer received the Balanced Housing Funds or otherwise, including but not limited to, any affirmative action and/or prevailing wage laws." We do not find that language determinative. First, it requires compliance with "applicable" laws; if the Act is not otherwise applicable, this provision does not make it so. Second, the express reference to "any ... prevailing wage laws," without citing the Act and stating it to be applicable, suggests only that the drafters required Circle F to comply with any applicable federal or state prevailing wage law. See, e.g., 40 U.S.C.A. § 276A et seq. (the Davis-Bacon Act).[3]
The issue presented is whether the agreement between Circle F and Costanza, to which neither the City of Trenton nor the State is literally a party, should nevertheless be construed as a "contract ... for ... public work to which any public body is a party" and therefore subject to the Act.
As the Supreme Court stated in Richard's Auto City, Inc. v. Director, Div. of Taxation, 140 N.J. 523, 531, 659 A.2d 1360 (1995):
In the enterprise of statutory construction, the first step is the examination of the provisions of the legislative enactment to ascertain whether they are expressed in plain language that, in accordance with ordinary meaning, clearly and unambiguously yields only one interpretation.
If we were to hold that the Costanza contract with Circle F is subject to the Act, our
decision would render meaningless that portion of N.J.S.A. 34:11-56.27 that modifies the phrase "[e]very contract ... for any public work" with the phrase of limitation "to which any public body is a party." Had the Legislature intended that every contract for construction of public work be subject to the Prevailing Wage Act, irrespective of the identity of the parties to the contract, there would have been no reason to include in the statute the phrase "to which any public body is a party ...." Our Supreme Court has clearly stated that "[a] construction that will render any part of a statute inoperative, superfluous, or meaningless, is to be avoided." State v. Reynolds, 124 N.J. 559, 564, 592 A.2d 194 (1991). See also Paper Mill Playhouse v. Millburn Tp., 95 N.J. 503, 521, 472 A.2d 517 (1984); Central Constrn. Co. v. Horn, 179 N.J.Super. 95, 101-02, 430 A.2d 939 (App.Div.1981) ("The Legislature is presumed not to employ meaningless language or to intend useless legislation.")
Any suggestion that this phrase of limitation"to which any public body is a party" is superfluous is belied by the consistent repetition of a similar adjective phrase throughout the Act. For example, N.J.S.A. 34:11-56.28 provides:
The public body or lessor awarding any contract for public work or otherwise undertaking any public work shall ascertain from the commissioner the prevailing wage rate in the locality in which the public work is to be performed for each craft or trade needed to perform the contract....

[emphasis added.]
Similarly, N.J.S.A. 34:11-56.29 provides
Every contractor and subcontractor shall
keep an accurate record ... of wages paid.... The record shall be open at all reasonable hours to the inspection of the public body awarding the contract ....

[emphasis added.]
N.J.S.A. 34:11-56.38 provides:

The public body awarding any contract for public work, or otherwise undertaking any public work, or entering into a lease or agreement to lease pursuant to which public *623 work is to be done, shall first ascertain from the commissioner the list of names of contractors or subcontractors who have failed to pay prevailing wages ....

[Emphasis added.]
Each of these sections describes "the public body" by the phrase "awarding [a] contract." Obviously, a public body cannot "award" a contract to which it is not a party.
We recognize a certain ambiguity in the Act's reference to "the public body [ ] awarding any contract for public work or otherwise undertaking any public work ..." See N.J.S.A. 34:11-56.28 (requiring a public body to ascertain the prevailing wage and so specify in covered contracts). See also N.J.S.A. 34:11-56.38 (requiring a public body to ascertain the identities of violators and prohibiting for three years an award of any contract for public work to a contractor who has violated the Act). The "otherwise undertaking" language of these sections, examined separately, is subject to the inference that some other involvement of a public body, neither as a party to the contract nor as a lessor of the subject property, could bring the contract within the Act's coverage. The legislative history does not enlighten us with respect to the phrase "otherwise undertaking." However, because "awarding" a contract implies a contract for which bids have been received, and not every contract for public work by a public body is subject to bidding, see, e.g., N.J.S.A. 40A:11-5, we suspect that the "otherwise undertaking" language was intended to cover such non-bid contracts.
We have previously recognized that the Prevailing Wage Act is remedial legislation entitled to liberal construction to effectuate the
public policy of this State to establish a prevailing wage level for workmen engaged in public works in order to safeguard their efficiency and general well being and to protect them as well as their employers from the effects of serious and unfair competition resulting from wage levels detrimental to efficiency and well-being.

[N.J.S.A. 34:11-56.25.]
See Horn v. Serritella Brothers, Inc., 190 N.J.Super. 280, 463 A.2d 366 (App.Div.1983); see also Central Construction, 179 N.J.Super. at 104, 430 A.2d 939. Recognizing that purpose, however, does not permit us, much less require us, to ignore the plain language of the statute itself.
The Attorney General's advice to the DOL, in response to plaintiffs' request for action against Circle F and Costanza, was to cite its 1990 opinion responding to an inquiry from the Chief of the Public Contracts Section concerning the applicability of the Act to three specific projects, each involving "a grant by a public agency to a private entity to assist in the construction of housing" and a construction contract between the private entity and the contractor. One of the three projects specifically involved a contract between the City of Camden and a private developer, financed by a combination of private moneys and a Department of Community Affairs grant, much like the case before us.
In 1990 Attorney General cited the literal language of the statute, then applicable to "[e]very contract in excess of $2,000 for any public work to which any public body is a party ...." and advised:
The foregoing statutory provision clearly states that the prevailing wage must be paid only where there is a public work contract to which a public body is a party. In the situations presented here, no public body is a party to the construction contracts in question. Instead, the construction contracts are between a private entity and a general contractor. Thus, the plain language of the Prevailing Wage Act indicates that the statute does not apply to the contracts in question.
The fact that the source of the funds for the contracts is a grant from a public body is immaterial. Where the Legislature has intended that the prevailing wage be paid on projects financed by a public body that is not a party to the resulting project, it has stated such intention explicitly. For example, N.J.S.A. 55:14K-42 expressly states that a housing sponsor granted a loan from the Housing Finance Agency, or any contractor engaged by such housing sponsor, shall pay workmen on *624 any qualified project not less than the prevailing wage rate. Similarly, the Legislature has specifically provided that where a construction contract is undertaken with the financial assistance of the Economic Development Authority, the workers must receive the prevailing wage rate. N.J.S.A. 34:1B-5.1. Thus, the Legislature has recognized that the Prevailing Wage Act does not cover contracts made between private parties for which financing has been provided by a public agency. In the absence of a clear statutory statement that prevailing wages must be paid in such a situation, there is no basis for ignoring the limitation of N.J.S.A. 34:11-56.27 to contracts to which a public body is a party.
We agree with the Attorney General's interpretation, which the DOL as well as the Law Division Judge followed.
We have also considered whether the chain of contracts, that is, the grant agreement between the Department of Community Affairs and the City, the developer's agreement between the City and Circle F, and Circle F's contract with Costanza, makes the construction contract one to which a public body is a party. In other words, should the combined contracts constitute one contract for purposes of applying the Prevailing Wage Act?
There is some facial appeal to the concept that these agreements should be viewed as a whole, and Trenton considered a "party" to the Costanza contract for purposes of the Act. The Long Term Tax Exemption Law, specifically at N.J.S.A. 40A:20-4, provides in pertinent part that "the undertaking of a project by an urban renewal entity pursuant to [a redevelopment] plan ... shall be deemed a delegation of the powers of the municipality to undertake the project...." The delegation does not, however, turn the developer into a public body. After careful consideration, we conclude that these contracts are not to be treated as one under current law.
If the Legislature had intended the Prevailing Wage Act, originally enacted in 1963, to apply to all public works projects without exception, it could have expressed that intention in the subsequently enacted statutes that apply to this project: the Fair Housing Act, N.J.S.A. 52:27D-301 et seq.; the Neighborhood Housing Services Grant Fund Act, N.J.S.A. 52:27D-366 et seq.; the Long Term Tax Exemption Law, N.J.S.A. 40A:20-1 et seq.; and the Local Redevelopment and Housing Law, N.J.S.A. 40A:12A-1, et seq. Indeed, the Legislature apparently recognized that the Prevailing Wage Act did not by its own terms apply where the public bodybe it the state or a municipality conveys funds by grant or loan to an independent entity, which then contracts for construction or other services. Hence the provisions in the Housing and Mortgage Finance Act, N.J.S.A. 55:14K-42,[4] and the Economic Development Act, N.J.S.A. 34:1b-5.1.[5] We conclude that the Legislature did not intend the Act to cover contracts such as that between Urban F and Costanza, where the public entity is a conduit for state grant moneys to subsidize the creation of low cost housing, and where higher construction costs *625 would reduce the number of housing units created with that subsidy.
Moreover, the Prevailing Wage Act was amended by L.1990, c. 27, with respect to its scope, to "provide[] for the payment of prevailing wages for work performed on ... property ... leased or to be leased by a public body whether or not the work is paid for from public funds." See Sen. Labor, Industry and Professions Committee Statement, Assy No. 2895, L.1990, c.27. That amendment reflects the Legislature's reexamination and extension of the scope of the Act's coverage by adding to its definition of covered contracts, contracts "for public work to be done on property or premises leased or to be leased by a public body ...." N.J.S.A. 34:11-56.27.[6]
That amendment demonstrates the Legislature's recognition that the Act as previously written would not apply to a contract for public work to which the public body is not a party. It also contributes to our conclusion that the Legislature intends only what the Act's literal language prescribes. That is, only contracts to which a public body is a party, or for public work leased by a public body, are subject to the Act, absent express legislation placing specific contracts within the Act's coverage. E.g., N.J.S.A. 55:14K-42; N.J.S.A. 34:1B-5.1. "The Legislature is assumed to be thoroughly familiar with its own enactments...." Monaghan v. Holy Trinity Church, 275 N.J.Super. 594, 602, 646 A.2d 1130 (App.Div.1994). See also Thomas v. Teaneck Bd. of Educ., 184 N.J.Super. 443, 446 A.2d 547 (App.Div.1982), rejecting the public employees' claim that their work on public work projects entitled them to the prevailing wage under the Act, and holding the Act applicable only to "contracts with contractors." Id. at 446, 446 A.2d 547.
While a policy argument can be made in favor of broad application of the Act to all contracts for public works, this court is not the place for such an argument. The Legislature has apparently concluded that the goals expressed in the Fair Housing Act and the Long Term Tax Exemption Law, that is, to provide incentives to bring private developers into partnership with government to create affordable housing in communities around the state; to improve conditions in certain run-down urban areas; and to maintain strict cost controls over such projects, take precedence over the goals of the Prevailing Wage Act. We cannot interfere with that choice.
Plaintiffs also contend that summary judgment was premature because plaintiffs were entitled to discovery, including "whether defendants Lutheran and Circle F Partnership are indeed legitimate entities ... [and] the relationship, if any, between defendant Costanza and defendants Lutheran and Circle F Partnership." That contention is without merit, as the issue before us is solely one of statutory construction. See R. 2:11-3(e)(1)(E).
With respect to our jurisdiction or that of the Law Division, the DOL contends that its May 6, 1996, response to FFC constitutes a final action of an administrative agency. Because plaintiffs filed a complaint for declaratory judgment in the Law Division eight months after the Department's decision, instead of filing an appeal with this court within the forty-five days permitted by R. 2:4-1 (or the additional thirty days available pursuant to R. 2:4-4), the DOL urges us to affirm the Law Division's dismissal, but solely for lack of jurisdiction, without addressing plaintiffs' standing or the merits of the complaint.
When FFC requested enforcement of the Act on this project, the DOL responded by letter of April 4, 1996, relating the Attorney General's advice "that construction projects being funded in whole or in part with public funds but involve [sic] no contract with any public body do not require payment of wages under the New Jersey Prevailing Wage Act." The writer suggested that FFC "explore statutory or regulatory changes that may eliminate this confusion on future publicly funded projects of this nature." The DOL then effectively invited FFC to bring a declaratory judgment action when it responded to FFC's request for reconsideration on May 6, 1996, stating that "[a]bsent a declaratory *626 judgment from a court of competent jurisdiction we have no plans to reconsider our administrative policy at this time."
We conclude that DOL's responses to FFC constituted expressions of its "administrative policy" and not a final determination. Compare In re Unclaimed Property Office, 309 N.J.Super. 272, 275 (App.Div.), certif. granted, 156 N.J. 381 (1998). FFC's challenge to quasi-legislative action therefore was not subject to the time limits applicable to a final decision pursuant to R. 2:4-1(b). See Pressler, Current N.J. Court Rules, comment 2 to R. 2:4-1 (1999).
An appeal from administrative agency action is exclusively cognizable in the Appellate Division. See R. 2:2-3(a)(2). Nevertheless, the Law Division Judge had the power to transfer the matter to the Appellate Division and we will regard that done nunc pro tunc. See R. 1:13-4.
We are satisfied that the substantive issue raised by this appeal is one of public importance that is likely to arise again. We therefore conclude that under all the circumstances, the issue warranted our consideration on the merits.
We affirm the dismissal of plaintiffs' complaint.
NOTES
[1] The Fair Housing Act was the Legislature's response to the Supreme Court's decisions in Southern Burlington County NAACP v. Mt. Laurel, 67 N.J. 151, 336 A.2d 713 (1975), and 92 N.J. 158, 456 A.2d 390 (1983), holding that growing municipalities have a constitutional obligation to provide a fair share of the regional demand for low and moderate income housing.
[2] Circle F and Lutheran Senior Services are referred to collectively as "Circle F."
[3] There is no contention that the federal law applies here.
[4] N.J.S.A. 55:14K-42 provides:

Each qualified housing sponsor granted a loan from the [Housing and Mortgage Finance Agency], or any builder, contractor or subcontractor engaged by the qualified housing sponsor for the construction or rehabilitation of any housing project, shall pay the workmen employed in the performance of any contract for such construction or rehabilitation not less than the prevailing wage rate.
In Newark Laborers Pension-Welfare Funds v. Comm'l Union Ins. Co. of N.Y., 126 N.J.Super. 1, 312 A.2d 649 (App.Div.1973), we held that the Prevailing Wage Act applied to workers on a housing project in Newark, financed in part by loans from the New Jersey Housing Finance Agency. We cited N.J.S.A. 55:14J-37, now repealed and replaced by N.J.S.A. 55:14K-42, expressly requiring the prevailing wage to be paid on any project financed by the Housing and Mortgage Finance Agency.
[5] N.J.S.A. 34:1B-5.1 provides:

The New Jersey Economic Development Authority shall adopt rules and regulations requiring that not less than the prevailing wage rate be paid to workers employed in the performance of construction contracts undertaken in connection with Authority financial assistance. The prevailing wage rate shall be the rate determined by the Commissioner of Labor and Industry pursuant to the provisions of P.L.1963, c. 150 (C. 34:11-56.25 et seq.
[6] The Act's coverage was also modified by replacing for most purposes the absolute $2,000 contract amount with "the prevailing wage contract threshold amount," to be adjusted every five years. L.1995, c. 259. See N.J.S.A. 34:11-56.26 (11)(a); 34:11-56.27.