777 A.2d 74

JOANN BANKSTON, PLAINTIFF–APPELLANT, v. HOUSING AU-THORITY OF THE CITY OF NEWARK, AN AGENCY AND IN-STRUMENTALITY OF THE CITY OF NEWARK, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 23, 2001—Decided June 28, 2001.

[6] Particularly, in the absence of some proof of legal representation by John of his father, Judge Fisher was correct not to let him stand in his father's shoes.

466

Before Judges CARCHMAN, LINTNER [1] and PARRILLO.

*Paul Schachter* argued the cause for appellant (*Reinhardt & Schachter*, attorneys; *Mr. Schachter*, of counsel and on the brief; *Andrea Costello* on the brief).

*Samuel M. Manigault* argued the cause for respondent (*Mr. Manigault* and *Carla Gail Wilson*, on the brief).

The opinion of the court was delivered by

PARRILLO, J.S.C. (temporarily assigned).

This dispute between plaintiff Joann Bankston and her employer, defendant Housing Authority of the City of Newark (NHA), arises out of the employee's claim that the NHA owes her backpay from September 1992 to August 1997 for having failed to pay her prevailing or union wages. The motion judge granted summary judgment in defendant's favor and dismissed plaintiff's contract and statutory claims. We affirm.

In 1992, plaintiff, a tenant of public housing owned and managed by the NHA, applied for employment in a "Resident Initiative Program" (program) operated by the NHA. This on-the-job training program was only open to public housing residents and was designed to help them develop marketable skills, attain employment in the private sector, and become self-sufficient.

On September 20, 1992, plaintiff was hired by the NHA, as part of the program, as a temporary employee to perform tile setting and related work. She was designated with the NHA's employee-trainee title of "Pre Apprentice Tile Setter Helper." After having been hired, plaintiff attended an orientation session where the program was explained along with benefit and salary information. Her initial salary was $7.00 per hour, which was increased to $7.50 per hour in June 1993.

---

[1] Judge Lintner did not participate in oral argument. However, the parties consented to his participation in the decision.

Plaintiff received on-the-job training working on various projects involving NHA properties. Her duties included preparation of floors for tiling, floor measurement, application of adhesive to flooring, and actual cutting and laying of tile. According to plaintiff, NHA supervisors and union journeymen Tile Setters instructed her in these tasks and worked along side her at the NHA housing sites, although at times she was left unsupervised.

Until August 1997 when her title and status changed to Building Maintenance Worker, plaintiff continued working as a Pre Apprentice Tile Setter Helper, and the NHA's personnel and payroll records designated her as functioning in the agency's employee-trainee title at the hourly rate of $7.50. As a Building Maintenance Worker in August 1997, plaintiff became a member of the Service Employees International Union, Local 617 (union), which was the exclusive representative of the NHA's maintenance employees, and earned union wages. Under the terms of the collective bargaining agreement then in effect between the union and the NHA, "Tile Setter Helper," with a minimum starting salary of $22,000 to $25,000, is included in the list of job classifications. The collective bargaining agreement does not cover employee-trainee "pre-apprentice" job titles.

Plaintiff filed suit against the NHA on February 9, 1998 and contended that she actually functioned in the maintenance employee classification of "Tile Setter Helper," but was not paid at the proper rate of compensation in violation of common law contract principles, the New Jersey Prevailing Wage Act (Act), *N.J.S.A.* 34:11–56.25 *et seq.*, the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5–1 *et seq.*, and the New Jersey Equal Pay Act, *N.J.S.A.* 34:11–56.1 *et seq.* Plaintiff voluntarily dismissed the latter two claims, and the motion judge dismissed the former two on summary judgment. Plaintiff appeals this determination, arguing that the NHA was obligated to pay her either the prevailing wage under the Act or the union wage paid to the NHA maintenance employees covered by the collective bargaining agreement.

### I.

■ The Act was passed to protect the compensation rates paid to laborers under a public work contract. *Horn v. Serritella Bros., Inc.,* 190 *N.J.Super.* 280, 283, 463 *A.*2d 366 (App.Div.1983). The legislative purpose is as follows:

[T]o establish a prevailing wage level for workmen engaged in public works in order to safeguard their efficiency and general well being and to protect them as well as their employers from the effects of serious and unfair competition resulting from wage levels detrimental to efficiency and well being.

*N.J.S.A.* 34:11–56.25.

[*Horn, supra,* 190 *N.J.Super.* at 283, 463 *A.*2d 366.]

This court in *Cipparulo v. David Friedland Painting Co., Inc.,* 139 *N.J.Super.* 142, 353 *A.*2d 105 (App.Div.1976), explained the reasoning behind establishment of specific wage rates:

The prevailing wage rate is a minimum wage rate and is unquestionably designed to protect union contractors from under bidding on public work by their non-union competitors who conceivably would have the advantage of paying their labor nonunion wages.... Its purpose is to insure that the prevailing wage rate existing at the time of the signing of a public contract constitutes the minimum wage paid to workers under that contract.

[*Cipparulo, supra,* 139 *N.J.Super.* at 148, 353 *A.*2d 105.]

■ Because the Act "is remedial in nature," *Horn v. Serritella Bros., Inc., supra,* 190 *N.J.Super.* at 283, 463 *A.*2d 366, it " 'is entitled to a liberal construction and application in order to effectuate the strong public policy of protecting those whose labor goes into public projects.' " *Ibid.,* (quoting *Newark Laborers' Pension–Welfare Funds v. Comm. Union Ins. Co.,* 126 *N.J.Super.* 1, 8, 312 *A.*2d 649 (App.Div.1973)). Although subject to broad interpretation, courts have given the language of the Act its plain meaning. *Foundation for Fair Contracting, Ltd. v. New Jersey State Dept. of Labor Wage and Hour Compliance Div.,* 316 *N.J.Super.* 437, 446–47, 720 *A.*2d 619 (App.Div.1998) (holding that public entity must be a party to the contract rather than merely supplying a grant of monies for contractor to be subject to the Act); *Serraino v. Mar–D, Inc.* 228 *N.J.Super.* 482, 487, 550 *A.*2d 178 (Law Div.1988) (holding that Act's use of the term "all workmen" requires general contractor to pay both the employees

of the contractor and the employees of the subcontractor the prevailing wage). The plain language of the Act clearly and unequivocally demonstrates that it applies only to a contractor's employees and not, as here, to a direct employee of a public agency.

The Act operates requires that all "public-works" contracts over $2,000 contain a provision mandating payment of a stated prevailing wage "to the workmen employed in the performance of the contract." *N.J.S.A.* 34:11–56.27. *N.J.S.A.* 34:11–56.26(5) defines "public work" as "construction, reconstruction, demolition, alteration, or repair work, or maintenance work, including painting and decorating, done *under contract* and paid for in whole or in part out of the funds of a public body . . . ." (emphasis added). Additionally, *N.J.S.A.* 34:11–56.26(7) states that "workman" includes "laborer, mechanic, skilled or semi-skilled, laborer and apprentices or helpers *employed by any contractor or subcontractor* and engaged in the performance of services directly upon a public work, regardless of whether their work becomes a component part thereof, but does not include material suppliers or their employees who do not perform services at the job site." (emphasis added). Apart from these references, the Act reiterates that the private contractor who receives the contract for the public work is obligated to pay the prevailing rate. Thus, under *N.J.S.A.* 34:11–56.28, the general contractor is responsible for ensuring that all workers on the project are properly paid. Moreover, *N.J.S.A.* 34:11–56.33(a) states, in pertinent part, as follows:

> [I]t shall be the duty of the treasurer of the public body . . . to require the *contractor and subcontractor* to file written statements . . . certifying to the amounts then due and owing from such *contractor and subcontractor* . . . to any and all workmen for wages due on account of public work. . . .
>
> [*Ibid.* (emphasis added).]

Furthermore, *N.J.S.A.* 34:11–56.32 requires that "[c]ontractors and subcontractors performing public work of a public body subject to the provisions of this act shall post the prevailing wage rates for each craft and classification involved as determined by the commissioner . . . ."

We have ruled that the Act does not apply to public entity employees such as plaintiff here. In *Thomas v. Teaneck Bd. of Educ.*, 184 *N.J.Super.* 443, 445–46, 446 *A.*2d 547 (App.Div.1982), we held that the Act was "applicable only in favor of employees of contractors and subcontractors on public work projects and not in favor of permanent or temporary employees of public subdivisions which themselves undertake public work projects." There, the Teaneck Board of Education undertook the repair and construction of a school auditorium after private bids failed to comport with the authorized bond amount available for the project. *Id.* at 445, 446 *A.*2d 547. The school board temporarily hired a mason to assist with the project. *Ibid.* The mason was hired at a rate below the prevailing wage rate in the locality and brought suit after completion of the construction to be compensated at the prevailing rate. *Ibid.* This court determined that the Act did not protect the mason as an employee of the school board and therefore the mason was not entitled to the prevailing wage. *Id.* at 446–47, 446 *A.*2d 547.

The situation here is indistinguishable. As an employee of the NHA rather than of a general contractor working on a public works project, the Act affords plaintiff no protection.

## II.

Plaintiff, who has failed to demonstrate entitlement to the prevailing wage, is due only that which her employer contractually obligated itself to pay. In this regard, plaintiff argues alternatively that because she functioned as a "Tile Setter Helper" she is entitled to the wage rate set forth in the collective bargaining agreement covering this job classification. This contention is without merit.

Plaintiff was hired pursuant to a program voluntarily initiated by the NHA and made available exclusively to its public housing tenants. The Resident Initiative Program embodies federal policy that public housing agencies, such as the NHA, "shall encourage and reward employment and economic self-sufficiency." 42

*U.S.C.A.* § 1437(a). Although it implemented important public policy considerations, this program was statutorily neither mandated nor prohibited. Its administration was subject to no federal or state regulatory oversight. Consequently, it was completely within the agency's own authority and discretion to create the position of "Pre–Apprentice Tile Setter Helper," establish the terms and conditions thereof, and employ plaintiff therein.

Plaintiff applied for enrollment in this program aware of the terms and conditions of her employment. As the beneficiary of a government program based solely on her status as a public housing tenant, plaintiff was offered a temporary employee-at-will position to obtain on-the-job training for subsequent entry into the private sector labor market. Her status entitled her to no more— certainly not a guaranteed union job for which competitive examination might have been required and for which she would have had to qualify independently.

Although employees-at-will are afforded protection, *see Woolley v. Hoffmann–LaRoche, Inc.,* 99 *N.J.* 284, 291, 491 *A.*2d 1257 (1985), plaintiff points to no breach of any duty owed by her employer. She enrolled in a pre-apprentice helper program designed to improve labor skills and economic self-sufficiency, and not to guarantee her elevation into a competitive, union-classified job title. The fact that she eventually qualified for such a position and now earns union wages does not lend any support for her claim of entitlement beforehand. Under the circumstances, there was no contract, express or implied, to pay plaintiff union wages while she functioned in the pre-apprentice employee-trainee position. Moreover, plaintiff points to no statutory or regulatory mandate commanding the NHA to put temporary employees-at-will whom it wishes to function in an on-the-job training program into job classifications covered by an existing union collective bargaining agreement.

Nor was plaintiff the intended beneficiary of the collective bargaining agreement between the NHA and the union. Even assuming that plaintiff actually functioned as a tile setter helper

from September 1992 to August 1997, she failed to show that the NHA breached its collective bargaining agreement with the union by not having paid plaintiff the wages applicable thereunder for comparable work. To the contrary, plaintiff's position was that of a "Pre–Apprentice Tile Setter Helper," an agency designated title not covered by its existing collective bargaining agreement with the union. Nowhere in that agreement is a pre-apprentice tile setter helper guaranteed a certain salary. As such, the agreement extends no protection to plaintiff.

Simply put, plaintiff had a non-union job title and was hired on terms and conditions made clear at the outset-as a temporary employee-at-will receiving on-the-job training in tile setting. Despite her naked claim that the NHA created a fictitious job title in "pre-apprenticeship" to avoid coverage under the collective bargaining agreement, no legal or contract principle obligated the NHA to pay her the wage rate set forth in the union contract.

In conclusion, we hold that plaintiff's statutory and contractual wage claims are without merit. The Act requiring contractors to pay their employees the prevailing rate when the contractor is awarded a public works project does not apply to public housing authorities as direct employers. Finally, there was no contract to pay plaintiff union wages, and the collective bargaining agreement does not contemplate paying an individual in a resident work program a specified wage. Accordingly, we uphold the trial court's summary judgment dismissing plaintiff's claims.

Affirmed.