293 N.J. Super. 558 (1996)
681 A.2d 1237
JAMES S. GALLO, PLAINTIFF,
v.
SPHERE CONSTRUCTION CORP., DEFENDANT.
Superior Court of New Jersey, Chancery Division Sussex County.
Decided January 16, 1996.[1]
*560 Dennis Joy for plaintiff James S. Gallo.
Michael J. Holub for defendant Sphere Construction Corporation (Kelly, Gaus & Holub, attorneys).
MacKENZIE, P.J.Ch.
This is a case of first impression involving the issue of whether a general contractor may file a lien against property under the New Jersey Construction Lien Law, N.J.S.A. 2A:44A-1 to -38, where the property owner terminated negotiations prior to the execution of a written contract for construction.
Plaintiff James S. Gallo (Gallo) owns undeveloped land in the Township of Sparta, Sussex County, New Jersey, which is known as Block 35, Lot 25 of the Sparta Township Tax Map. In June 1995, Gallo entered into a long-term lease with J-Mal, Inc. (J-Mal), a franchisee of Kiddie Academy International, Inc., for rental of a building to be erected on the property, which J-Mal would use as a child care center. Gallo solicited bids from various general contractors for construction of the building, eventually selecting the bid submitted by defendant Sphere Construction Corporation (Sphere).
After preliminary negotiations had seemingly led to an agreement between Gallo and Gerald Nechamkin (Nechamkin), president of Sphere, Gallo advised Nechamkin on October 17, 1995 to prepare a written contract. Gallo then confirmed the understanding of the parties by letter dated October 31, 1995. The letter stated, in pertinent part: "Please consider this my letter of intent to enter into a formal contract with you for the building and sitework for the Kiddie Academy in Sparta." At or about the *561 same time, Sphere prepared and submitted to Gallo a standard American Institute of Architects Form of Agreement (AIA Document A107).
On November 9, Dennis Joy, Esq., Gallo's attorney, sent a letter to Nechamkin indicating that the form of agreement, as prepared, was unacceptable to Gallo, and suggesting several alterations that would render the proposed contract acceptable. Further discussions between Gallo and Nechamkin took place on November 15, following which the parties were unable to agree on certain critical aspects of the contract, including the construction completion date and the consequences of Sphere's failure or inability to complete the project by that date. On November 16, Joy notified Nechamkin by letter that Gallo was cancelling a meeting with Nechamkin scheduled for later that morning. The letter further informed Nechamkin that Gallo was terminating negotiations between the parties because Gallo intended to award the contract to another builder.
On November 17, 1995, Kevin D. Kelly, Esq., Sphere's attorney, filed a purported construction lien claim against Gallo's property in the office of the Sussex County Clerk. The amount of the lien claim was $792,000, which represented the full amount of the rejected contract. This action to discharge the construction lien claim followed by way of verified complaint and order to show cause. Prior to the return date, however, Sphere discharged the original lien claim and substituted a second lien claim on December 26, 1995. The new lien claim, signed and submitted by Nechamkin, was for $94,631, which Nechamkin alleged represented the actual work performed by Sphere plus its lost profits. Although the filing of the second construction lien claim rendered moot the original issue for court determination, the attorneys for both parties asked the court to decide whether the second lien claim should be permitted to remain of record pendente lite.
Plaintiff advances the following arguments: (1) any construction lien claim is improper because there is no contract between Gallo and Sphere which satisfies the definitional requirement of "contract" *562 contained in the Construction Lien Law, and (2) the amount of the lien claim filed by Sphere, which included lost profits, is excessive because the right to such a lien exists only with respect to work or services actually performed, or material or equipment actually furnished. The questions thus presented are: (1) whether Sphere was statutorily entitled to file either lien, and (2) whether the now discharged first lien has any effect on Sphere's right to file a second lien.
The Construction Lien Law was signed into law on December 23, 1993, and took effect on April 22, 1994, thereby repealing the old Mechanics' Lien Law and portions of the Municipal Mechanics' Lien Law.[2] The Construction Lien Law provides, in pertinent part:
Any contractor, subcontractor or supplier who provides work, services, material or equipment pursuant to a contract, shall be entitled to a lien for the value of the work or services performed, or materials or equipment furnished in accordance with the contract and based upon the contract price, subject to the provisions of [N.J.S.A. 2A:44A-9 and 2A:44A-10]. The lien shall attach to the interest of the owner in the real property.
[N.J.S.A. 2A:44A-3.]
In order for a contractor, subcontractor or supplier to be entitled to a lien, any work or services performed, or material or equipment provided, must have been done "pursuant to a contract." "Contract" is expressly defined in the act as "any agreement, or amendment thereto, in writing, evidencing the respective responsibilities of the contracting parties...." N.J.S.A. 2A:44-2 (emphasis added). Thus, according to the clear language of the statute, a written agreement between the parties is a prerequisite to the filing of any lien claim.
As a general rule, if a statute is clear and unambiguous, the court "need delve no deeper than the act's literal terms to divine the Legislature's intent." State v. Butler, 89 N.J. 220, 226, *563 445 A.2d 399 (1982). When the Legislature specifically defines a term, as it did here, courts are bound by that express definition. Febbi v. Board of Review, Div. of Employment Sec., Dep't of Labor and Indus., 35 N.J. 601, 606, 174 A.2d 481 (1961); Eagle Truck Transport, Inc. v. Board of Review, Div. of Employment Sec., Dep't of Labor and Indus., 29 N.J. 280, 289, 148 A.2d 822 (1959). When statutory language is clear and unambiguous, the court's function is to enforce the statute as written, absent any specific indication of legislative intent to the contrary. Chase Manhattan Bank v. Josephson, 135 N.J. 209, 225, 638 A.2d 1301 (1994); State, Dep't of Law and Pub. Safety, Div. of Motor Vehicles v. Bigham, 119 N.J. 646, 650-51, 575 A.2d 868 (1990).
The court must turn to the legislative history to determine whether evidence of any "contrary legislative intent" exists which would support the position that a valid lien claim may exist in the absence of a written contract. The Sponsor's Statement, which details the anticipated results of the Construction Lien Law as envisioned by its sponsor, is silent on the issue.[3] However, the committees reporting out the bill in both chambers of the Legislature made statements containing the following, identical language:
[This bill] provides that a contractor, subcontractor or supplier who provides work, services, material or equipment for use in the improvement of real property pursuant to a written contract, is entitled to a lien on the owner's interest in the *564 real property for the value of the work or services performed, or material or equipment furnished in accordance with the contract.
New Jersey Senate Commerce Committee Statement to Senate Committee Substitute for S1010, S811, and S1394, May 27, 1993, at 1; New Jersey Assembly Judiciary, Law and Public Safety Committee Statement to Senate Committee Substitute for S1010, S811, and S1394, November 8, 1993, at 1. After reviewing the legislative history behind the Construction Lien Law, the court is satisfied that no evidence of a contrary legislative intent exists which would support the argument that the Legislature intended to permit the filing of a lien claim in the absence of a written contract. The court therefore concludes that a written contract is a prerequisite to the filing of valid lien claim.
In the present case, no "contract" which satisfies the statutory definition contained in the Construction Lien Law is present. While Sphere did offer to plaintiff an AIA Form of Agreement which would have satisfied the statutory definition of "contract," the Agreement was never executed, and therefore cannot form the basis of a valid construction lien claim. Consequently, Sphere is not entitled to a lien.
Furthermore, as to the amount of the claim, N.J.S.A. 2A:44A-9 provides "[t]he amount of a lien claim shall be limited to the contract price, or any unpaid portion thereof, whichever is less, of the claimant's contract for the work, services, material or equipment provided." The statute speaks clearly as to the right to a lien only with respect to work or services performed, or material or equipment furnished, not with respect to work or services to be performed, or material or equipment to be furnished. Even though the court is satisfied that Sphere has failed to establish a contract with Gallo which satisfies the statutory definition, if a written contract had been executed, the lien could only be claimed with respect to work or material already provided.
Here, Sphere did perform some work and/or services in furtherance of the project. In early October, Gallo urged Nechamkin to use the services of Gallo's friend, Bob Robertson, of Triple R *565 Excavating, as his excavating subcontractor. Nechamkin agreed, and Robertson performed some work on the site. The original plans had to be revised, because the site was extremely wet. On November 6, Gallo authorized an additional expense of $8,500 and a change order for a French drain, the installation of which was supervised by Nechamkin. Gallo gave a $5,000 check to Sphere as a deposit on the French drain installation. Sphere, in turn, delivered the $5,000 check to Triple R before the work commenced. The total value of work performed by Triple R was $6,650, of which $1,650 remains outstanding.
In addition, Nechamkin began to obtain the required permits so that actual construction could commence. Specifically, he submitted an application to the buildings department, contacted third parties concerning a well permit, received sealed architectural drawings, and met with Gallo again to complete the paperwork required by the buildings department. Nechamkin also contacted HVAC subcontractors and sprinkler system subcontractors requesting proposals, as Gallo's plans omitted these features.
Assuming arguendo that a "contract" existed, and hence, that a "contract price" could be determined, the amount of the lien would be limited to the unpaid portion of the contract price for "work, services, material or equipment" that had actually been provided. Accordingly, the maximum amount of the lien to which Sphere would arguably be entitled is $1,650, plus the value of Sphere's time in obtaining the permits, but not $94,631. The statute contains no provision for lost profits on construction projects.
The court now turns to the second issue, the effect of the improperly filed first lien. N.J.S.A. 2A:44A-15(a) provides:
If a lien claim is without basis, the amount of the lien claim is willfully overstated, or the lien claim is not filed in substantially the form or in the manner or at a time not in accordance with the provisions of this act, the claimant shall forfeit all claimed lien rights and rights to file subsequent lien claims to the extent of the face amount claimed in the lien claim. The claimant shall also be liable for all court costs, and reasonable legal expenses, including attorneys' fees, incurred by the owner, contractor or subcontractor, or any combination of owner, contractor and subcontractor, in defending or causing the discharge of the lien claim. The *566 court shall, in addition, enter judgment against the claimant for damages to any of the parties adversely affected by the lien claim.
N.J.S.A. 2A:44A-15(c) additionally provides that:
If a lien claim is forfeited pursuant to this section, or [N.J.S.A. 2A:44A-14], nothing herein shall be construed to bar the filing of a subsequent lien claim, provided, however, any subsequent lien claim shall not include a claim for the work, services, equipment or material claimed within the forfeited lien claim.
Sphere's original construction lien claim was clearly overstated willfully, without basis, and not in substantial accordance with the terms of the statute. First, Sphere filed its original lien for the entire purported contract price, even though Sphere had only supplied a few thousand dollars worth of services and no materials. Accordingly, the lien was "willfully overstated." Next, according to the clear language of the act, Sphere had no basis to file the lien in the absence of a written contract. Finally, the original lien was signed by Sphere's attorney, rather than Nechamkin or some other corporate officer. Thus, the original lien was procedurally defective under N.J.S.A. 2A:44A-6, which requires that the lien claim be "signed, acknowledged and verified by oath of the claimant or, in the case of a partnership or corporation, a partner or duly authorized officer thereof...." Under the circumstances, the court concludes that Sphere forfeited its right to file a second construction lien claim for any work or services contained in the original, improper lien claim.
For the above reasons, an order will be entered directing defendant to discharge the December 26, 1995 lien claim.
NOTES
[1] The within opinion expands upon a letter opinion issued by the Court on January 16, 1996.
[2] The Construction Lien Law, N.J.S.A. 2A:44A-1 to -38, repeals the following statutes: N.J.S.A. 2A:44-64 through 2A:44-104; N.J.S.A. 2A:44-106 through 2A:44-124, and P.L. 1979, c. 301 (C.2A:44-124.1).
[3] The bill requires that funds received by owners in connection with the improvement of real property, or by contractors or subcontractors in connection with a contract for improvement of real property, shall constitute assets of a trust. By establishing such funds as assets of a trust, the bill:

insures that construction funding ends up going to suppliers, subcontractors and contractors who work on the improvement; provides for severe penalties and personal liability upon anyone diverting these assets from their proper construction purposes; eliminates the age-old problem of "pyramiding" in which construction monies from one project are used to finance other jobs; reduces the possibility of fraud by requiring separate record-keeping for each construction project; and facilitates honesty and fair dealing by allowing frequent examination and copying of books and records dedicated to each construction project.
Senator Jack Sinagra, Sponsor's Statement, S1394, at p. 29.