858 A.2d 1148

PATOCK CONSTRUCTION CO., INC., A NEW JERSEY CORPORA-
TION, PLAINTIFF–APPELLANT, v. GVK ENTERPRISES, LLC,
A NEW JERSEY LIMITED LIABILITY CO., DEFENDANT–RE-
SPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted September 20, 2004—Decided October 18, 2004.

Before Judges PETRELLA, PARKER and YANNOTTI.

*Leonard S. Needle,* attorney for appellant.

*Martin J. Arbus,* attorney for respondent.

The opinion of the court was delivered by

PETRELLA, P.J.A.D.

Plaintiff Patock Construction Company (Patock) appeals from a dismissal of its construction lien, as well as awards of attorney's fees against it and in favor of defendant GVK Enterprises, LLC (GVK).

Patock was not paid for certain construction work it performed for GVK. Patock filed a claim for $85,985.16 based on a construction lien claim, breach of contract and quantum meruit.

After a bench trial, Patock was found to be entitled only to damages based on quantum meruit. However, the trial judge dismissed Patock's construction lien and breach of contract claims and awarded counsel fees to GVK. The net result was a judgment in favor of GVK for $6,535.26.

Patock argues on its appeal that: (1) the trial judge erred in ruling that no written agreement existed between the parties to support the filing of Patock's construction lien claim; (2) the evidence did not support the judge's finding that the construction lien was willfully overstated; (3) the judge erred in dismissing the second count of Patock's complaint alleging breach of an express contract and limiting Patock's remedy to recover on the theory of quantum meruit; (4) the award of attorney's fees to defendant pursuant to *N.J.S.A.* 2A:44A–15 was excessive; and (5) the award of additional attorney's fees under the offer of judgment rule was improper.

In the summer of 1997, George Klodin, the owner of GVK, approached Patock regarding a construction project on behalf of Colorest, a store also owned by Klodin that sells custom picture frames and radio controlled toys. Klodin wanted Patock to renovate an abandoned building purchased by Klodin in GVK's name so that Colorest could relocate into the renovated building and so that portions of the building could be leased to other tenants.

Prior to the purchase of the property, Colorest was operating from leased premises.

While Klodin intended to pay for the entire renovation project with bank loans of $125,000 to $140,000, Patock and GVK did not fix a price for the anticipated work. Patock's president, Jay Patock, testified that there was no fixed price because GVK had only given them a preliminary construction plan. Jay Patock considered it a "time and material job" and that his company would be paid on completion of the project. No hourly rate was discussed and there was no written contract.

Klodin terminated Patock in November 1997, because he felt that Patock was not doing much work and was behind schedule. He hired Tri–Tech, another construction company, to finish the project. The project was soon completed and Colorest vacated its leased property on January 1, 1998. The only amount GVK paid to Patock was $5,800 in October 1997.

After its termination, Patock sent a letter to GVK requesting $85,985.16, after crediting the $5,800 received. Patock received no payment or response from GVK, causing it to file a construction lien claim on December 11, 1997 with the Monmouth County Clerk for $77,597.76, which purportedly represented the value of Patock's work. An amendment was filed on December 24, 1997, increasing the total owed to $85,985.16. In its lien document, Patock stated that "[t]he work, services, materials or equipment was provided pursuant to the terms of a written contract ... dated 10/10/97...." One of the main issues at the ensuing trial was the value of Patock's work.

Patock's records, dated February 13, 1998, reflected that the total due was $87,761.54. However, different sections of the records stated different amounts owed. Labor costs were listed as $51,436.10 in the computer-generated portion, but was represented to be $68,814.44 in a handwritten notation. A Patock employee stated that the difference included workmen's compensation, insurance premiums, and equipment costs. Costs for materials were $9,293.42. In the handwritten portion, Patock also

applied a 15% markup that increased the bill to $93,561.54. After deducting $5,800, Patock calculated the amount outstanding as $87,761.54.

Another area referencing the value of Patock's work was contained in two documents entitled "Application and Certificate for Payment." Allegedly, to get the construction loan from the bank, Klodin was required to obtain requisitions from the contractors for estimates of the project. Different requisition forms were used to obtain different portions of the bank loan.

One application, submitted on September 23, 1997, showed the total contract amount to be $142,900. This included estimates for demolition, carpentry, electrical, and various other aspects of the construction detail. The cost of the carpentry work, Patock's responsibility, was estimated to be $20,000. Indeed, Jay Patock testified that Patock was responsible only for the carpentry work. All other work listed in the application was performed by other subcontractors. Even though Jay Patock personally signed the application, he claimed that Klodin prepared the estimate.

On October 28, 1997, a second "Application and Certificate for Payment" was submitted. This one reflected the scheduled cost of carpentry as $26,000. Again, Jay Patock claimed that the estimate was supplied by Klodin. Both of these applications came with affidavits of work completed, which were signed by Klodin.

Also bearing on the value of Patock's work was an expert's opinion that the value of the construction done by Patock was $12,530; Klodin's deposition evidence that Patock had initially estimated $15,000; and Tri–Tech's agreement to finish the project for $7,125.

At the conclusion of the trial, the judge invalidated the construction lien and dismissed the first and second counts of Patock's complaint because there was no written contract based on the evidence presented. The affidavits signed by Klodin in connection with the bank loans were not enough to constitute the parties' agreement because they did not tell "[the court] what was to be

done, how it was to be billed." Moreover, the judge found that Patock willfully overstated the amount listed on the construction lien and erred in asserting a written contract. The only amounts for the job in writing were the $20,000 and $26,000 as reflected in the requisitions. Therefore, the judge concluded that Patock's filing of a construction lien for $77,597.76 and then an amended lien for $85,985.16 was a willful overstatement. Patock's records were considered not reliable.

Notwithstanding the invalid construction lien, the judge granted Patock limited relief based on the quantum meruit claim, finding Patock entitled to a net of $12,500 for the reasonable value of work performed. From the amounts listed in the requisition and the expert's testimony, the judge determined that $26,000 was a reasonable amount for the entire job. After deducting the amount paid to Tri–Tech for completing the work ($7,125), the amount already paid to Patock ($5,800), and some miscellaneous amounts, the judge determined a net value of $12,500. Prejudgment interest was awarded in the amount of $3,041.72.

However, GVK sought counsel fees based on the construction lien law and submitted a certificate of services in the amount of $37,298.25, which included costs and counsel fees. The judge agreed with GVK and ruled that *N.J.S.A.* 2A:44A–15a allowed counsel fees when defending a lien claim that was without basis. Nonetheless, because Patock's complaint was not based solely on the lien but also contained a meritorious quantum meruit claim, the judge only awarded 45% of GVK's costs and fees. After subtracting some of the claimed fees that were not related to the litigated issues, $14,448.71 was awarded, leaving a judgment for Patock of $1,093.01.

On September 20, 2002, GVK moved to amend the judgment based on the offer of judgment rule.[1] This time, GVK sought

---

[1] GVK had offered to settle on October 9, 1999, under *R.* 4:58–1 "for $7,500, without prejudice, with costs accrued to the date hereof." Patock did not accept the offer.

approximately $14,000, which represented the remainder of its counsel fees not awarded under the construction lien statute. On October 2, 2002, the judge granted GVK's motion, but modified the remaining counsel fees to $12,713.79. The judge then awarded 60% of that amount, $7,628.27, to GVK, resulting in a net judgment of $6,535.26 in GVK's favor.

## I.

Patock argues that the Law Division judge erred in finding that a written agreement did not exist between the parties because it asserts that the affidavits signed by Klodin in connection with the work requisitions satisfied the requirements of the construction lien statute.

Under the construction lien law, only a contractor who performs services pursuant to a contract is entitled to file a lien. *N.J.S.A.* 2A:44A–3. Under *N.J.S.A.* 2A:44A–2, a "contract" is:

> any agreement, or amendment thereto, in writing, evidencing the respective responsibilities of the contracting parties, which, in the case of a supplier, shall include a delivery or order slip signed by the owner, contractor, or subcontractor having a direct contractual relation with a contractor, or an authorized agent of any of them.

The amount of the lien is "limited to the contract price, or any unpaid portion thereof, whichever is less, of the claimant's contract for the work, services, material or equipment provided." *N.J.S.A.* 2A:44A–9.

The purpose of the written contract is to provide "tangible evidence that 'will reduce the factual proof problems in litigated matters and provide a sound basis for third parties to evaluate the merits of the lien claim.'" *Legge Indus. v. Joseph Kushner Hebrew Acad./JKHA,* 333 *N.J.Super.* 537, 562, 756 *A.2d* 608 (App.Div.2000) (*quoting* "Report and Legislative Recommendations of the Mechanics' Lien Law Study Commission" at 16). A written agreement serves as evidence of " 'the respective responsibilities of the contracting parties.'" *Id.* at 559, 756 *A.2d* 608 (*quoting N.J.S.A.* 2A:44A–2).

Jay Patock conceded that there was no written contract, but asserted the affidavits constituted a "contract" under the construction lien law. However, the affidavits do not establish the essential responsibilities between Klodin and Patock. Indeed, the affidavits show little other than that Patock performed services for Klodin. They provide no basis for third parties to assess the merits of Patock's lien.

Moreover, while Patock relies on our opinion in *Legge* to the effect that documents other than delivery slips may evidence a contract, the plaintiffs in *Legge* were materials suppliers. The relationship between suppliers and buyers-owners differs from that between contractors and owners. GVK did not dispute that it received some benefit from Patock's construction services; rather, the issues are the extent of Patock's performance and the value of its work. The affidavits are insufficient to evidence the parties' agreement in that respect.

Even assuming that the affidavits would satisfy the lien statute, the construction lien would be invalid because the alleged contracts did not support the amount stated on the lien. *See N.J.S.A.* 2A:44A–9. Klodin received bank loans of $51,756 and $73,244, respectively, after the two requisitions were submitted. Because Patock admitted that it would only be responsible for carpentry, it is only entitled to a small portion of those bank loans.

The judge's finding that a written contract did not exist and subsequent rejection of the lien amounts was appropriate.

## II.

Patock also contends that the judge erred in finding that the lien was willfully overstated.

The construction lien law provides:

If a lien claim is without basis, the amount of the lien claim is willfully overstated, or the lien claim is not filed in substantially the form or in the manner or at a time not in accordance with the provisions of this act, the claimant shall forfeit all claimed lien rights and rights to file subsequent lien claims to the extent of the face amount claimed in the lien claim. The claimant shall also be liable for all court

costs, and reasonable legal expenses, including attorneys' fees, incurred by the owner, contractor or subcontractor ... in defending or causing the discharge of the lien claim. The court shall, in addition, enter judgment against the claimant for damages to any of the parties adversely affected by the lien claim.

[*N.J.S.A.* 2A:44A–15a.]

In *Legge,* we stated that "a willful overstatement connotes an intent to recover that to which the claimant knows he is not entitled; in other words, a claim made in bad faith." *Legge, supra* (333 *N.J.Super.* at 561, 756 *A.*2d 608). A construction lien claim that is not supported by a written agreement and for a total agreed price rather than the services performed may also constitute a willful overstatement. *Gallo v. Sphere Constr. Corp.,* 293 *N.J.Super.* 558, 566, 681 *A.*2d 1237 (Ch.Div.1996).

The amount of the construction lien was not supported by any of the witnesses' testimony. The judge found Jay Patock's testimony not credible and Kenneth Chatto, Patock's construction supervisor, could not estimate how much the work was worth. On the other hand, many of GVK's witnesses, including the expert and Tri–Tech's owner, testified that the work performed was much less than what was claimed. Furthermore, none of the exhibits at trial supported the lien amount, including the bank requisitions. Even if the documents in connection with the bank loans were reliable evidence of GVK's obligations with Patock, they did not establish that Patock was entitled to $85,000.

The judge's determination that Patock willfully overstated the construction lien is supported by sufficient credible evidence in the record. *Rova Farms Resort, Inc. v. Investors Ins. Co. of Am.,* 65 *N.J.* 474, 484, 323 *A.*2d 495 (1974). Indeed, the only evidence tending to support the lien amount is the computer-generated expense records produced at trial by Patock. However, these records were unreliable, contained inconsistencies in connection with the labor costs, and required handwritten notations and testimony for clarification. Moreover, this document was dated February 13, 1998, which was three months after the filing of the construction lien. Nothing exists prior to the filing of the con-

struction lien that shows the manner by which Patock calculated the amount of the lien.

While the lien stated that it was based on an October 10, 1997 agreement, there was no such agreement established. That October date corresponded to the date of the $5,800 payment, and little else.

Based on these circumstances, sufficient credible evidence existed for the Law Division judge to conclude that the lien was willfully overstated.

### III.

Patock argues that the judge erroneously dismissed its breach of contract claim because "[f]or the Court to have placed a cap of $26,000.00 as the most plaintiff could recover implies that Patock was bound to perform the carpentry work at that price. If Patock was so bound, then an agreement between the parties must be deemed to have existed." Patock also appears to contend that the judge erred in a quantum meruit analysis.

We reject the argument that a contract existed. The judge did not determine that the maximum amount Patock could recover was $26,000. Rather, the $26,000 reflected the total value of the carpentry work GVK received.

We also reject Patock's challenge to the sufficiency of the quantum meruit award, as well as Patock's claims that its computer-generated business records were reliable and supported a quantum meruit award that exceeded the amount awarded.

### IV.

Patock contends that the $14,448.71 award of attorney's fees under the construction lien law was improper based on its assertions that a written agreement existed and the claim was not willfully overstated. Further, Patock argues that the award was not based on the actual services expended for GVK in defending the claim, but was only expressed as a percentage of the total bill.

The judge's findings were to the contrary and, as previously stated, are supported by the record.

As we have noted, the construction lien law allows the award of fees incurred in the defense of a claim that was "without basis" or "willfully overstated." *N.J.S.A.* 2A:44A–15a.

■ We reject Patock's claim that the $14,448.71, or 45% of GVK's attorney's fees, did not represent the amount expended in defense of the construction lien claim. A trial court's award of attorneys' fees generally is not disturbed unless there is a clear abuse of discretion. *Packard–Bamberger & Co., Inc. v. Collier,* 167 *N.J.* 427, 444, 771 *A.2d* 1194 (2001).

Here, Patock has not shown that the judge erred in the fee determination. This was a case that involved material issues of fact and at five days of trial, various witnesses testified and numerous exhibits were produced. The interrelated claims and issues in this case blurred the boundaries of the construction lien claim and the quantum meruit case. While Patock argues that GVK could have moved to dismiss the claim based on a lack of a written agreement prior to the trial, Patock also might have sought to amend its complaint in response. *See R.* 4:9–1. Therefore, we decline to disturb the judge's exercise of discretion as to the fee award.

## V.

Finally, Patock contends that the fees awarded under the offer of judgment rule were improper. Specifically, it argues that the offer of judgment did not settle the entire claim because it contained the words "without prejudice," did not strictly comply with *R.* 4:58–1 because it referred to a "first scheduled" trial date, and would be a double recovery because attorney's fees had already been awarded under the construction lien law.

We reject Patock's contentions. We observe that the offer of judgment in this case replicates that found in 4A *New Jersey*

*Practice, Civil Practice Forms,* § 74.2 (James H. Walzer) (4th ed.1991).

Nonetheless, we disagree that the award of attorney's fees under the offer of judgment rule was a double recovery. GVK submitted a certificate of services for $37,298.25. Of this total amount, the judge awarded $14,448.71 to GVK as permitted by the construction lien law. Of the remaining fees sought, the judge awarded $7,628.27 under the offer of judgment rule. The aggregate amount of attorney's fees awarded did not exceed the total amount claimed in the certification of services. There is nothing to indicate that the judge awarded attorney's fees under the offer of judgment rule for services already awarded under the construction lien law.

Affirmed.