953 A.2d 775 (2008)
402 N.J. Super. 229
Thomas BEST, Plaintiff-Respondent/Cross-Appellant,
v.
C & M DOOR CONTROLS, INC., Defendant-Appellant/Cross-Respondent, and
Christopher O'Keefe and Michael Craven, Defendants.
No. A-3801-06T2
Superior Court of New Jersey, Appellate Division.
Argued May 29, 2008.
Decided August 19, 2008.
*777 John F. Casey, West Orange, argued the cause for appellant/cross-respondent (Wolff & Samson, P.C., attorneys; Mr. Casey and Kiran V. Somashekara, on the brief).
Steven J. Greenstein, Rahway, argued the cause for respondent/cross-appellant (Tobin, Reitman, Greenstein, Caruso, Wiener & Konray, P.C., attorneys; Mr. Greenstein, on the brief).
*778 Before Judges STERN, SAPP-PETERSON and MESSANO.
The opinion of the court was delivered by
MESSANO, J.A.D.
In this appeal, we consider the interplay between two competing public policies, each of which are fostered by the award of counsel fees to the prevailing party in the litigation. On the one hand, our Legislature has adopted certain fee-shifting statutes requiring or permitting an award of counsel fees to a prevailing plaintiff in order "to ensure `that plaintiffs with bona fide claims are able to find lawyers to represent them[,] ... to attract competent counsel in cases involving statutory rights, ... and to ensure justice for all citizens.'" New Jerseyans for a Death Penalty Moratorium v. N.J. Dep't of Corr., 185 N.J. 137, 153, 883 A.2d 329 (2005)(quoting Coleman v. Fiore Bros., 113 N.J. 594, 598, 552 A.2d 141 (1989)). In this case, we deal with one such statute, the Prevailing Wage Act (PWA), N.J.S.A. 34:11-56.25 to -56.47. On the other hand, "to encourage, promote, and stimulate early out-of-court settlement of ... claims that in justice and reason ought to be settled without trial," Schettino v. Roizman Dev., Inc., 158 N.J. 476, 482, 730 A.2d 797 (1999)(quoting Crudup v. Marrero, 57 N.J. 353, 361, 273 A.2d 16 (1971)), the Supreme Court has adopted the offer of judgment rule, Rule 4:58 (the Rule), which permits an award of counsel fees and costs to a prevailing party whose offer of judgment has been rejected by the other side.
Defendant, C & M Door Controls, Inc., appeals from those portions of the February 7, 2007, order for judgment that 1) granted plaintiff, Thomas Best, $62,529.65 in counsel fees and costs; and 2) denied defendant's motion for counsel fees and costs made pursuant to the Rule and the frivolous litigation provision of the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14, specifically N.J.S.A. 34:19-6. Plaintiff cross-appeals challenging the amount of the award.

I.
On May 3, 2004, plaintiff filed his complaint against defendant, its vice president, Christopher O'Keefe, and plaintiff's supervisor, Michael Craven, alleging violations of the PWA and CEPA.[1] Specifically, plaintiff alleged that by mischaracterizing the nature of his work assignments and miscalculating the hours he worked, defendant underpaid him for work performed on prevailing-wage projects. He further alleged that when he reported the matter to the New Jersey Department of Labor (DOL), which resulted in an audit of defendant's records, his employer retaliated against him by assigning him tasks in the company warehouse. These jobs were not eligible for the higher paying prevailing-wage hourly rates. Defendant filed an answer on July 26, 2004, generally denying plaintiff's allegations and asserting various affirmative defenses.
After discovery, on July 21, 2006, plaintiff made an offer of judgment "for the total sum of [$100,000] inclusive of all damages... any and all costs ... and/or attorneys' fees." On July 21, 2006, defendant made its own offer of judgment, $15,000, "including ... damages, [] any and all costs ... and/or attorneys' fees." Four days later, on July 25, defendant made a second offer of judgment in the amount of $25,000. Plaintiff did not accept *779 defendant's offer and the matter proceeded to trial before a jury from August 14 to August 24, 2006. At trial, although plaintiff's claim under the PWA for wages due totaled $46,262.46, the jury returned a verdict of only $2,600, and found no cause for an award on plaintiff's CEPA claim.
Thereafter, plaintiff moved for an award of counsel fees pursuant to the fee-shifting provision of the PWA, N.J.S.A. 34:11-56.40, while defendant moved for fees pursuant to both the Rule and N.J.S.A. 34:19-6. Plaintiff requested $122,925 in attorneys' fees, $5,493.29 in paraprofessional costs, $602.30 in taxed costs, and $18,472.50 in litigation expenses; defendant meanwhile sought $42,417 in attorneys' fees and $328.48 in litigation expenses under the Rule, or, alternatively, $79,011.98 in fees and costs under CEPA. The trial judge considered oral argument on the applications on October 6, 2006, and filed a comprehensive written decision on January 23, 2007.
The judge found that "[t]he public interest was served ... while [p]laintiff's counsel prosecuted the PWA claim for [his] client." However, the judge also concluded that plaintiff's counsel was entitled to a fee award only "up [] until the time [he][was] clearly vindicat[ing] his client's rights," and therefore he needed to "determine when [p]laintiff's counsel achieved that goal." The judge determined that once defendant made its offer of judgment of $25,000 in July 2006, plaintiff's rights were "unequivocally vindicated," particularly in light of plaintiff's "admittedly small wage claim" and "tenuous proofs." He determined that "continuing with [the] litigation" thereafter "was unreasonable." He therefore concluded that plaintiff's counsel fee award must be based upon only those services rendered "until July of 2006."
The judge then considered defendant's request under the Rule. He noted the amendment to the Rule, effective September 1, 2006, "provide[d] that the [Rule] should not apply if a fee allowance ... would conflict with the policy underlying a fee-shifting provision." He concluded that in order "to prevent jeopardizing the policy fostered by the PWA's fee[-]shifting provision, the fee allowable under the [Rule] should not be allowed." The judge further concluded that defendant's fee request made under CEPA's frivolous claim provision should be denied because there was "no judicial finding that the claims asserted by [p]laintiff ... were frivolous or without basis in fact or law," citing our holding in Buccinna v. Micheletti, 311 N.J.Super. 557, 710 A.2d 1019 (App.Div. 1998).
The judge then considered the appropriate amount to award plaintiff using the analysis set forth in Rendine v. Pantzer, 141 N.J. 292, 661 A.2d 1202 (1995), and applying the factors contained in Rule 4:42-9 and R.P.C. 1.5(a). After finding counsel's hourly fee and the amount of time expended to be reasonable, the judge limited the "lodestar" for the award to the time spent by counsel prosecuting plaintiff's case prior to July 2006. He then further reduced the award based on plaintiff's "limited success" in prosecuting his claims. In this regard, the judge observed that "[p]laintiff's billing does not clearly distinguish the amount of time spent on the CEPA claim," but "others prosecuting similar cases have spent approximately forty [ ] percent of their time on the CEPA claim." He therefore limited plaintiff's recovery to sixty percent of the 226.77 hours expended before July 2006, a total of 136 hours. He limited plaintiff's requested paralegal fees and litigation costs by using the same percentage.
*780 On February 7, 2007, the judge filed the order now under review, and this appeal and cross-appeal followed.

II.
Defendant contends 1) that the judge erred by applying the Rule as amended in 2006; 2) alternatively, that even if the new version of the Rule was applicable, an award of counsel fees was appropriate because under the facts of this case, the policies supporting the award do not conflict with the policies that support the fee-shifting provisions of the PWA; 3) that it was entitled to an award of counsel fees under the frivolous litigation provisions of CEPA; and 4) that any award made to plaintiff was unjustified.
Plaintiff counters by arguing 1) that he was entitled to an award of counsel fees under the PWA; 2) that in both its pre- and post-2006 versions, the Rule is inapplicable to any litigation involving a fee-shifting statute; 3) that the judge erred in limiting his award to only those services provided prior to defendant's offer of judgment in July 2006; and 4) that it was error to reduce the award by forty percent because plaintiff failed to prevail on his CEPA claim.
We have considered the arguments raised in light of the record and applicable legal standards. We reverse and remand for further proceedings consistent with this opinion.

A.
We first consider defendant's argument that it was entitled to an award of counsel fees under CEPA's frivolous litigation section, N.J.S.A. 34:19-6, which provides, "[a] court ... may ... order that reasonable attorneys' fees and court costs be awarded to an employer if the court determines that an action brought by an employee under this act was without basis in law or in fact." We affirm that portion of the order that denied defendant's request for fees under this provision of CEPA substantially for the reasons expressed by the trial judge in his written opinion. R. 2:11-3(e)(1)(A).
In Buccinna, we reversed the trial judge's award of litigation costs to defendants after a bench trial resulted in a no cause verdict on plaintiff's CEPA claim. Buccinna, supra, 311 N.J.Super. at 560, 710 A.2d 1019. We concluded that such an award was not justified under N.J.S.A. 34:19-6 despite the no cause verdict because "[t]here was no finding that Buccinna's cause of action was without basis in law or in fact[.]" Id. at 562, 710 A.2d 1019.
In this case, defendant moved at the conclusion of plaintiff's case to dismiss the CEPA claim, R. 4:37-2, but the judge denied the request finding sufficient evidence upon which the jury could find in plaintiff's favor. Defendant has not directly attacked that conclusion. In our opinion, the trial judge's determination not to dismiss plaintiff's CEPA claim and to submit the case to the jury forecloses any further consideration that the claim "was without [any] basis in law or in fact," thus, justifying a counsel fee award to defendant. We therefore affirm the denial of defendant's request for fees and costs under CEPA.

B.
We next consider whether defendant was entitled to an award of counsel fees and costs under the Rule. When defendant extended its offer of judgment and the case was tried, Rule 4:58-3 provided in relevant part,
Consequences of Non-Acceptance of Offer of Party Not a Claimant
If the offer of a party other than the claimant is not accepted, and the determination *781 is favorable to the offeror as defined by this rule, the offeror shall be allowed, in addition to costs of suit, the allowances as prescribed by R. 4:58-2, which shall constitute a prior charge on the judgment. A favorable determination qualifying for allowances under this rule is a verdict or determination at least as favorable to the offeror as the offer or, if a money judgment, is in an amount, excluding allowable prejudgment interest and counsel fees, that is 80% of the offer or less. No allowances shall be granted, however, if the claimant's claim is dismissed, a no-cause verdict is returned, or only nominal damages are awarded.
The "allowances prescribed by Rule 4:58-2," included
(a) all reasonable litigation expenses incurred following non-acceptance; (b) prejudgment interest of eight percent on the amount of any money recovery from the date of the offer or the date of completion of discovery, whichever is later, but only to the extent that such prejudgment interest exceeds the interest prescribed by R. 4:42-11(b), which also shall be allowable; and (c) a reasonable attorney's fee, which shall belong to the client, for such subsequent services as are compelled by the non-acceptance.
Since the jury award of $2,600 on plaintiff's PWA claim was less than eighty percent of defendant's $25,000 offer of judgment, defendant contends it was entitled to an award of litigation expenses and counsel fees.
However, significant changes to the Rule were adopted on July 27, 2006, and made effective September 1, 2006, i.e., after the jury's verdict, but before defendant's application for fees and costs was filed, heard, and decided. While essentially leaving its predecessor's language unchanged as to the effect of non-acceptance by the claimant, and the definition of "a favorable determination qualifying for allowance," the amended Rule now provides,
Consequences of Non-Acceptance of Offer of Party Not a Claimant
....
(c) No allowances shall be granted if (1) the claimant's claim is dismissed, (2) a no-cause verdict is returned, (3) only nominal damages are awarded, (4) a fee allowance would conflict with the policies underlying a fee-shifting statute or rule of court, or (5) an allowance would impose undue hardship. If, however, undue hardship can be eliminated by reducing the allowance to a lower sum, the court shall reduce the amount of the allowance accordingly.
(Emphasis added.)
Whether the Rule has application to any litigation involving a fee-shifting statute was the subject of discussion prior to the 2006 amendment. See Pressler, Current N.J. Court Rules, comment on R. 4:58 (2006)(noting "[a]n inherent problem in application of the [Rule] is the situation in which either party may be entitled to an award of counsel fees on the basis of another rule or statute"). The Supreme Court Committee on Civil Practice noted in its 2006 report proposing the amendment that its "concerns centered on the equitable application of the [Rule ], especially in cases involving statutory fee shifting." Civ. Practice Comm., 2006 Comm. Report, p. 74 (March 7, 2006). Judge Pressler, commenting on the rationale behind the 2006 amendments to the Rule, has noted
[T]he complexity of the rule through its various permutations continued to engender considerable confusion respecting its application, and as use of the rule became more widespread, it appeared that there were interpretive problems, including the consequences and effect of *782 fee-shifting, whether by statute, rule or contract. That is to say, if the prevailing plaintiff is entitled to a fee because of a fee shifting statute ... but the losing party was entitled to a fee under this rule, having made an unaccepted offer in an adequate amount, the question arises as to how to reconcile the apparent conflict in award of fees.
[Pressler, Current N.J. Court Rules, comment 1 on R. 4:58 (2008).]
While defendant argues that the trial judge should have applied the pre-amendment version of the Rule in effect when it tendered its offer of judgment and the jury returned its verdict, we disagree. Recently, the Supreme Court considered whether the 2004 amendment to Rule 4:58-2, in effect when an offer was made but not when the verdict was returned, should apply to deny the plaintiff an award of fees and costs pursuant to the Rule. Romagnola v. Gillespie, Inc., 194 N.J. 596, 599-600, 947 A.2d 646 (2008). The Court "assume[d] that the trial court correctly determined that R[ule ] 4:58 is a rule of procedure[,]; that [a] procedural rule is in general to be deemed applicable to actions pending on its effective date as well as those instituted thereafter[,] and that [the] plaintiff's rights had not vested at the time Rule 4:58-2 was amended." Id. at 603-04, 947 A.2d 646 (internal quotations and citations omitted). The Court went on to determine that under the "peculiarly idiosyncratic set of facts presented in th[e] case," id. at 604, 947 A.2d 646, application of the amended Rule should be relaxed pursuant to Rule 1:1-2. Ibid.
Here, defendant made its offer of judgment, the trial occurred, and the jury returned its verdict prior to the effective date of the 2006 amendment to Rule 4:58-3. However, defendant did not file its application for costs and fees and the judge did not render a decision on that request until after the amendment became effective. While defendant may argue that all the events that vested its right to a recovery under the Rule occurred prior to the amendment, we note that the Rule is not self-operative. A party must make application for any recovery it seeks, and must do so within twenty days of the entry of final judgment. R. 4:58-5. Thus, when defendant actually sought to recover its litigation costs and counsel fees, on September 20, 2006, the amendment to the Rule was already in effect.[2]
We see no principled reason to revert to the prior version of the Rule by employing Rule 1:1-2 or some other rationale. As our discussion above disclosed, whether recovery by a non-claimant in a fee-shifting case was appropriate under the prior version of the Rule was always subject to some debate, and defendant was clearly on notice that no reported case had resolved that question.[3]
Thus, the issue becomes whether it was appropriate to deny defendant a fee *783 allowance because granting one "would conflict with the policies underlying a fee-shifting statute or rule of court." R. 4:58-3(c)(4). "When interpreting court rules, we ordinarily apply canons of statutory construction. Accordingly, as with a statute, the analysis must begin with the plain language of the rule." Wiese v. Dedhia, 188 N.J. 587, 592, 911 A.2d 479 (2006) (citations omitted). We "must ascribe to the [words of the rule] their ordinary meaning and significance ... and read them in context with related provisions so as to give sense to the [court rules] as a whole.... If the language of the rule is ambiguous such that it leads to more than one plausible interpretation, the Court may turn to extrinsic evidence." Ibid. (internal quotation marks and citations omitted).
While the language of the amended Rule is clear, we must strive to determine under what circumstances the Court believed the application of the Rule to award defendant a fee would "conflict" with legislative policies supporting the award of fees to the plaintiff. Since the Rule is not per force inapplicable to all fee-shifting statutes, we must presume the Court intended that it could be applied in some cases to grant allowances to a non-claimant who attained a favorable outcome. See Civ. Practice Comm., 2006 Comm. Report, supra, Appendix C, "Report of Offer of Judgment Sub-committee," p. 5-6 (setting forth various possible amendments, including a "carve-out" for all fee-shifting statutes, and rejecting same). As a result, we must examine closely the underlying policies of the particular fee-shifting statute at issue before determining whether or not to permit application of the Rule.
The PWA evidences the Legislature's expression of the State's public policy "to establish a prevailing wage level for workmen engaged in public works in order to safeguard their efficiency and general well being and to protect them as well as their employers from the effects of serious and unfair competition resulting from wage levels detrimental to efficiency and well-being." N.J.S.A. 34:11-56.25 (emphasis added). Our decisions have recognized the twin purposes of the PWA.
For example, in Bankston v. Housing Authority of City of Newark, 342 N.J.Super. 465, 469, 777 A.2d 74 (App.Div.2001), we noted that the PWA was enacted "to protect the compensation rates paid to laborers under a public work contract." In order to ensure workers' entitlement to prevailing wages, among other things the Legislature enacted N.J.S.A. 34:11-56.40, which provides that an employee may commence a civil action to recover unpaid prevailing wages, and "the employer shall be required to pay the costs and such reasonable attorney's fees as may be allowed by the court" if the plaintiff prevails. See Newark Laborers' Pension-Welfare Funds v. Commercial Union Ins. Co. of N.Y., 126 N.J.Super. 1, 8, 312 A.2d 649 (App.Div.1973)(noting "the Legislature sought to prevent the frustration of its declared policy by providing for the additional recovery of costs and reasonable attorney's fees, thus assuring laborers full payment of the wages due them").
However, the filing of a lawsuit is not the exclusive mechanism provided by the PWA to insure a worker is paid his proper wage. An employee "may protest in writing with the commissioner [of Labor] ... the amount of wages paid for service performed by him on a public work as being less than the prevailing wages for such services," N.J.S.A. 34:11-56.34(b), and the commissioner, upon determining a violation occurred, may "supervise the payment of [any] amounts due to workers." N.J.S.A. 34:11-56.36; see Troise v. Extel Communications, Inc., 345 N.J.Super. *784 231, 236, 784 A.2d 748 (App.Div.2001)(discussing alternative methods for enforcement), aff'd. 174 N.J. 375, 808 A.2d 96 (2002). Indeed, in this case, plaintiff's initial complaint to the DOL resulted in a preliminary audit, and a finding that defendant had mischaracterized some of plaintiff's work and owed him $3,651.61 in unpaid wages. Additionally, the PWA provides a comprehensive scheme for the administrative enforcement of an employer's obligations to pay prevailing wages independent of any particular worker's complaint or possible litigation. N.J.S.A. 34:11-56.35.
Unlike other remedial statutes, however, the PWA does not permit an aggrieved worker to recover anything other than the wages due to him. There is no ability to recover any other consequential, unliquidated, or punitive damages under the statute. Compare New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -42 (the LAD)(specifically N.J.S.A. 10:5-13, permitting a prevailing plaintiff "[a]ll remedies available in common law tort actions") and CEPA (specifically N.J.S.A. 34:19-5, permitting the same).
At the same time, we have recognized a second underlying policy of the PWA that specifically serves an employer's interest. In Cipparulo v. David Friedland Painting Co., 139 N.J.Super. 142, 148, 353 A.2d 105 (App.Div.1976), we noted the PWA "is unquestionably designed to protect union contractors from underbidding on public work by their non-union competitors who conceivably would have the advantage of paying their labor nonunion wages." In Cipparulo, we rejected a worker's claim that increases in the prevailing wage rate that became effective during the course of a lengthy contract for public work superseded specific contractual language setting wages. Ibid. We further noted that "the ability to predict wages to be paid to workers during the course of the execution of a public works contract is an essential element of a successful bid." Ibid.
Taking all these factors into account, we conclude that an award to defendant under the Rule does not conflict with the underlying policies of the PWA. Although plaintiff alleged defendant owed him significantly more money in unpaid wages than the $2,600 the jury awarded, the DOL initial audit determined otherwise, finding plaintiff was due only a small additional amount. We understand plaintiff argued that defendant had not provided all the necessary documentation to the auditor upon which he could base his conclusion. Nevertheless, the PWA provides alternative mechanisms by which an aggrieved worker may recover such a modest sum. Therefore pursuing the PWA claim through protracted litigation did not serve the statute's legislative purpose as it related to plaintiff as an aggrieved employee. Similarly, an employer's obligation to defend itself against a modest wage claim, thus incurring significant legal expenses in the process, does not further the legislative goal of insuring competitiveness and financial security to those employers who commit to the payment of prevailing wages.
If plaintiff's claim was limited solely to the PWA, our consideration of the Rule's application in this case would be complete. However, a portion of defendant's claimed allowance was attributable to its defense of plaintiff's CEPA claim. We must, therefore, consider whether applying the Rule to permit a recovery would conflict with the underlying purpose of CEPA.
The Supreme Court has noted that "[b]oth CEPA and [the] LAD ... seek[ ] to overcome the victimization of employees and to protect those who are especially vulnerable in the workplace from the improper or unlawful exercise of *785 authority by employers." Abbamont v. Piscataway Township Bd. of Educ., 138 N.J. 405, 418, 650 A.2d 958 (1994). CEPA's "overriding policy ... is to protect society at large." Cedeno v. Montclair State Univ., 163 N.J. 473, 478, 750 A.2d 73 (2000). The award of counsel fees to a plaintiff in a CEPA case, however, is discretionary and part of a larger framework of available remedies available to the court. N.J.S.A. 34:19-5(e). While discretionary, an award of attorneys' fees is nevertheless an appropriate tool to accomplish the legislative purposes of CEPA. Moody v. Township of Marlboro, 855 F.Supp. 685, 689-90 (D.N.J.1994), aff'd, 54 F.3d 769 (3d Cir.1995).
Unlike the PWA, there are no competing public policies underlying CEPA that serve the interests of the employer. We can assume that to the extent the Legislature intended to insure employers were not subject to frivolous claims, it enacted N.J.S.A. 34:19-6. In our view, it would be quite anomalous to permit an award of counsel fees and expenses to defendant under the Rule in light of this statutory scheme, and, therefore, we must conclude that any award would conflict with CEPA's underlying statutory policy.
We find further support for our conclusion in the mechanics of the Rule itself. As we noted, whether a non-claimant has received a "favorable determination," and, thus is entitled to an allowance, depends upon the comparison of two amounts: 1) the offer, which presumably must include an amount attributable to plaintiff's counsel fees in order to fully settle the case; and 2) the money judgment awarded by the jury, which clearly does not include any fee award. However, if the judgment "excluding allowable ... counsel fees" is less than eighty percent of the offer which did include counsel fees, the non-claimant is entitled to an allowance. Therefore, when a plaintiff considers an offer of judgment made by a defendant in most fee-shifting cases, he must determine whether the amount is sufficient both to cover his damages and compensate his counsel. Only then can the Rule's underlying policy of fostering settlement be served.
When a plaintiff's recovery is limited by statute to a liquidated sum, as under the PWA, this policy goal is easily effectuated. Plaintiff must assess the potential maximum amount of his recovery based upon his claim of actual money damages and the probabilities of succeeding in whole, or in part, on that claim. He can then more readily gauge whether defendant's offer is reasonable to the extent it includes additional monies to compensate his counsel. Under other fee-shifting statutes, however, where a plaintiff's claims include unliquidated and possibly punitive damages, the calculus is much more problematic. A plaintiff weighing defendant's offer of judgment in these circumstances, and trying to decide whether to settle, is put in a potentially adverse position with respect to his attorney. We seriously question, therefore, whether the policy goals underlying the Rule are ever furthered in such a setting, but, more importantly, we conclude that application of the Rule in those circumstances will indeed "conflict" with the policies supporting the fee-shifting statute.
Therefore, we reverse that portion of the order under review that denied defendant an award under the Rule. We remand for further proceedings in which the judge should determine what portion of defendant's allowance is attributable to its defense of plaintiff's PWA claim, and what portion is attributable to its defense of plaintiff's CEPA claim. An allowance awarded to defendant under the Rule shall be limited to defendant's reasonable litigation *786 expenses and attorneys' fees in defense of the PWA claim, compelled by plaintiff's non-acceptance of the offer. R. 4:58-2(a). We also note the judge's authority on remand to adjust the amount of any allowance if it "impose[s] undue hardship" on plaintiff. R. 4:58-3(c)(5).

C.
We also reluctantly reverse the judge's award of counsel fees to plaintiff under the PWA. Initially, we note that in reviewing a counsel fee award, we accord significant deference to the trial judge's determinations, which we will "`disturb[ ] only on the rarest of occasions, and then only because of a clear abuse of discretion.'" Packard-Bamberger & Co., Inc. v. Collier, 167 N.J. 427, 444, 771 A.2d 1194 (2001) (quoting Rendine, supra, 141 N.J. at 317, 661 A.2d 1202). We find no mistaken exercise of the judge's discretion with respect to the lodestar determinations, finding them to be reached after applying relevant case law and Court Rules. However, the judge did not express factual findings or reach legal conclusions supporting his determination that plaintiff's failed prosecution of his CEPA claim should result in a forty-percent reduction of allowable fees, and therefore, a remand is necessary.
A plaintiff need not achieve complete success to be awarded attorney's fees under a fee-shifting provision, nor need his recovery in damages be substantial. See Szczepanski v. Newcomb Med. Ctr., Inc., 141 N.J. 346, 354-55, 661 A.2d 1232 (1995)(plaintiff may be awarded fees after having achieved "only partial or limited success"). The judge properly recognized this principle, and believed a downward departure from the lodestar amount was required. However, he determined that plaintiff's award should be reduced because "others prosecuting similar cases have spent approximately forty [ ] percent of their time on the CEPA claim." This was an apparent reference to a similar PWA/CEPA claim brought by another plaintiff before another judge in the vicinage. We find that to be inadequate support for the judge's conclusion, and therefore, on remand, the judge must carefully consider the specific percentage reduction in plaintiff's counsel fee award that should be ordered based upon time actually spent on the failed CEPA claim.
We note the judge's self-expressed difficulty in consideration of the issue because plaintiff's counsel's billings did "not clearly distinguish the amount of time spent on the CEPA claim." We therefore leave to the judge's sound discretion the appropriate procedure for determining the issue. He may require further certifications, or even testimony from plaintiff's counsel, as he sees fit.
Despite plaintiff's argument to the contrary, we find no reason to reverse the judge's decision to limit plaintiff's award to only that time his counsel spent on the case prior to July 2006, when defendant made its offer of judgment. While neither the PWA nor the Rule support the conclusion that a plaintiff's recovery is automatically capped once a reasonable offer has been rejected, the judge did not apply the time limit in such a mechanical fashion.[4]
Rather, the judge found that plaintiff's counsel's decision to continue the *787 litigation after receipt of the offer was "unreasonable." Any court reviewing a request for counsel fees made by a prevailing plaintiff in fee-shifting litigation must consider "the hours expended, taking into account the damages prospectively recoverable, the interests to be vindicated, and the underlying statutory objectives," and if the hours "exceed those that competent counsel reasonably would have expended to achieve a comparable result, a trial court may exercise its discretion to exclude excessive hours from the lodestar calculation." Rendine, supra, 141 N.J. at 336, 661 A.2d 1202. This is essentially what the judge did by limiting plaintiff's fee award to services rendered prior to July 2006.

III.
In conclusion, we affirm that portion of the order of judgment denying defendant any recovery under CEPA's frivolous claims provision. We reverse the order for judgment in all other respects, and remand the matter to the trial judge for further proceedings consistent with this opinion.
Because the grant of an allowance to defendant under the Rule does not conflict with the policies that support the PWA, but does conflict with the policies supporting CEPA, we reverse and remand so that the judge can determine an appropriate allowance to award defendant under the Rule, limited solely to its defense of plaintiff's PWA claim.
We also reverse the award made to plaintiff. On remand, the judge shall determine what percentage of fees and costs is attributable to plaintiff's failed CEPA claim, and reduce plaintiff's counsel fee award by that amount. We leave the conduct of future proceedings to the sound discretion of the trial judge.
Affirmed in part; reversed in part and remanded. We do not retain jurisdiction.
STERN, P.J.A.D. (concurring).
I write to emphasize two points relating to my concurrence in the comprehensive opinion of the court. First, I do not necessarily agree with the holding that the 2006 amendments to Rule 4:58, the offer of judgment rule, apply. However, I would reach the same result under the Rule as it read at the time of the offer and trial. Secondly, the court demonstrates that the policy embodied in the Prevailing Wage Act is different for purposes of the exception embodied in Rule 4:58-3(c)(4), as amended in 2006, than the policy embodied in other fee-shifting statutes. In my view the offer of judgment rule might well be inapplicable when plaintiff prevails in a case commenced under another fee-shifting statute.
In Romagnola v. Gillespie, Inc., 194 N.J. 596, 598, 947 A.2d 646 (2008), the Supreme Court applied Rule 1:1-2 to relax the rules and permitted plaintiff "who properly invoked [the] Rule in its preamendment form" the benefit of the offer of judgment rule as it stood prior to the 2004 amendment, as the party was "unable to conform its earlier compliance to the amended Rule." In that case plaintiff received a recovery at a non-jury trial just prior to the September 2004 amendment of the Rule, in an amount above, but not more than 120 percent above, the offer, as required for collection under the Rule as provided in the September 2004 amendment, which took effect shortly before the Rule 4:58 application was considered. Based on "the peculiarly idiosyncratic set of facts presented in [the] case, a relaxation of the September 1, 2004 amendments to Rule 4:58-2" was deemed by the Supreme Court to be "a fitting and proper exercise of judicial discretion." Id., at 604, *788 947 A.2d 646. In other words, the Rule change had deprived plaintiff of his recovery under the Rule, and its relaxation avoided the injustice.
In Romagnola, as here, the trial had concluded shortly before the Rule was amended. There, plaintiff was "procedurally barred from amending his offer of judgment consistent with the September 1, 2004 amendments to the Rule" and barred from recovery thereunder. Plaintiffs would have prevailed under the former rule "had the trial court advanced its decision by three weeks, or had the amendments to Rule 4:58-2 been deferred by an equal period," and plaintiff was thus held entitled to recovery under the Rule "as it existed on the last day plaintiff could make a timely offer of judgment: twenty days before the trial started." Id. at 606, 947 A.2d 646.
However, the Court emphasized that relaxations under Rule 1:1-2 "will be granted only sparingly" and the proponents of relaxation under the Rule "bear a heavy burden." Ibid. This is particularly true "when a reasonable interpretation of the complex of directly applicable rules meets the problem at hand." Id. at 604, 947 A.2d 646.
Here, as in Romagnola, the defendant's offer was made with an understanding of the Rule as it then stood,[1] and contemplated the impact of the fee-shifting statutes. It would seem to me therefore that, where the defendant litigated by the Rules in contemplating its defense and settlement offer to dispose of the matter, including the potential of a fee-shifting application, it should not be retroactively deprived of the benefit of a Rule which was applicable at all relevant timesirrespective of determining whether the right was "vested" or not. The issue, it seems to me, is whether Rule 1:1-2 is impacted or applicable because the 2006 amendment to Rule 4:58-3 did not substantially affect the result.
I incline to the belief that the 2006 amendments, as proposed by the Supreme Court Civil Practice Committee in its 2006 supplemental report on the subject, merely clarify the Rule as it was properly understood, by express addition of language. See Civ. Practice Comm., 2006 Comm. Report (March 7, 2006). Rule 4:58-5 was adopted in 2006 to make applications subject to the provisions of Rule 4:42-9(b), and to provide that "[a] party who is awarded counsel fees, costs, or interest as a prevailing party pursuant to a fee-shifting statute, rule of court, contractual provision, or decisional law shall not be allowed to recover duplicative fees, costs, or interest under the rule." Even though the relevant subcommittee of the Civil Practice Committee "suggest[ed] that an explicit provision be added to Rule 4:58 to prohibit such duplicative fees," Civ. Practice Comm., 2006 Comm. Report, supra, Appendix C, "Report of the Offer of Judgment Subcommittee," p. 4, and the full Committee "overwhelmingly supported the provision," Civ. Practice Comm., 2006 Comm. Report, supra, p. 75, no one could believe duplicate recovery would be permitted prior to the amendment. See Patock Const. Co. v. GVK Enters., 372 N.J.Super. 380, 391, 858 A.2d 1148 (App. Div.2004), certif. denied, 182 N.J. 629, 868 A.2d 1032 (2005). It would seem therefore that the companion amendment to Rule 4:58-3(c)(4) may be understood to clarify the conversethat generally no recovery under the Rule should be permitted by the non-claimant when there is a recovery by *789 the claimant under a fee-shifting statute, but that recovery is not large enough to avoid a fee under the offer of judgment rule if it were applicable.
Despite the debate among members of the Civil Practice Committee as to whether the offer of judgment rule should be retained, and even among the subcommittee majority as to the best approach on which to apply the Rule to cases involving a fee-shifting claim, Civ. Practice Comm., 2006 Comm. Report, supra, Appendix C, p. 5-8, it seems to me that the Rule was never intended to "trump" an award under a fee-shifting statute when the claimant proceeded in good faith. As the subcommittee stated:
The more difficult scenario arises where a party bringing a claim that may substantively entitle that party to counsel fees declines an offer of judgment tendered under Rule 4:58, and thereafter prevails at trial but fails to obtain a verdict that reaches 80% of the rejected offer. In that scenario, any fees awarded to the defendant under Rule 4:58 might offset in full or in partor surpassthe counsel fees independently recoverable by the prevailing plaintiff. In certain contexts such an offsetting fee award may interfere with public policy considerations underlying the substantive fee-shifting claim.
The "public policy considerations underlying the substantive fee-shifting claim" have been the same long before the 2006 amendments were adopted, and I find nothing presented to us, or otherwise, which suggests the offer of judgment rule was ever designed to apply when the public policy of our state was embodied in a fee-shifting statute which permits recovery by a prevailing party.[2] Although there is no per se preclusion, a non-claimant's fee application under the Rule must be considered with that principle in mind, and the provisions of the 2006 amendments to Rule 4:58-3(c)(4) so clarify the rule. As Judge Pressler states in her commentary, the fee-shifting exception to Rule 4:58-3 "is intended to deal with that problem where denial of a full fee to the prevailing party would be inconsistent with the policy of the fee-shifting statute involved." Pressler, Current N.J. Court Rules, comment 1 on R. 4:58 (Gann 2008).
Recovery by a defendant under the Rule might well deprive a plaintiff of what he or she is entitled to by the clear public policy embodied in both a fee-shifting statute and implementing case law. Hence, I would generally not apply the offer of judgment rule in a case involving a recovery under a fee-shifting statute either because the award thereunder is inconsistent with the 2006 amendment to the Rule or because the 2006 rule amendments merely clarify the pre-existing Rule, thereby avoiding the need to consider the time-of-decision principle of Romagnola.
I concur in the application of the Rule in defendant's favor in this case, however, because Judge Messano has convincingly demonstrated why the public policy embodied in the Prevailing Wage Act does not trump the Rule and because the defendant's offer expressly included consideration of counsel fees, and therefore reasonably vindicated plaintiff's rights under the fee-shifting statute at the time it was made. As a result, the trial judge also properly limited the recovery to the date the $25,000 offer of judgment was made. This approach seems appropriate, as a matter of judicial discretion, and is not inconsistent with any one of the four options for resolving such applications as favored by a majority of the Civil Practice *790 subcommittee which made the recommendation that resulted in the 2006 amendments. See 2006 Comm. Report, supra, App. C at 5-8. I therefore endorse the approach of the majority and concur in the remand.
I add only that it seems to me this court has been involved in an increasing amount of appellate litigation relating exclusively to counsel fees. I would hope that, while each case is different and the policy behind fee-shifting is commendable and assures parties their day in court, we could come up with procedures or mechanisms that would avoid litigating exclusively over counsel fees at the expense of one of the parties or their attorney.
NOTES
[1] Plaintiff voluntarily dismissed his claims against O'Keefe prior to trial, and the judge granted defendant's motion in limine to dismiss plaintiff's claims against Craven. We shall therefore use the singular "defendant" throughout this opinion.
[2] We note our concurring colleague's disagreement with our analysis; furthermore, although the issue was not directly addressed, we concede that our decision in Sema v. Automall 46, 384 N.J.Super. 145, 153, 894 A.2d 77 (App.Div.2006), might imply from its facts that the version of the Rule in effect at the time of the verdict should control. We respectfully disagree with our colleagues in that regard.
[3] Even if we are incorrect in applying the post-2006 Rule, much of our subsequent discussion regarding policy concerns would apply to any application of the pre-amendment Rule. Since the amended Rule has been in effect for nearly two years, we do not anticipate the question as to which version of the Rule should apply will occur with much frequency in the future, and it is more appropriate for us to provide guidance regarding application of the amended Rule in the context of future fee-shifting statutory recoveries.
[4] A proposal discussed by the subcommittee of the Civil Practice Committee included the "capping" of any statutory fee award to the plaintiff by limiting it to only services provided prior to the rejection of a reasonable offer of judgment made by the non-claimant. See Civ. Practice Comm., 2006 Comm. Report, supra, Appendix C, p. 6. That proposal was not adopted.
[1] The offer was dated July 25, 2006, two days before the rule was amended, effective September 1, 2006.
[2] See Mason v. City of Hoboken, 196 N.J. 51, 79, 951 A.2d 1017 (2008) (defining a prevailing party as "a party who can establish a `causal nexus' between the litigation" and an ultimately favorable result).